ERIC JOHNSON *v.* STATE OF MARYLAND

[No. 360, September Term, 1967.]

*Decided July 29, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joseph G. Koutz* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Peter D. Ward, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty by a jury in the Criminal Court of Baltimore of murder in the first degree and attempted robbery with a deadly weapon. He was sentenced to imprisonment for the balance of his natural life on the murder convic-

tion and to a concurrent sentence of 10 years on the attempted robbery conviction. On appeal from the judgment he contends:

    I. He was denied a speedy trial;
   II. The trial court erred:
        1) in its ruling with regard to impeachment of a State's witness;
        2) in its instructions to the jury, and
        3) in the admissibility of certain testimony.
  III. The evidence was not sufficient to sustain the convictions.

I

The appellant and a co-defendant, Irvin LeRoy Brooks, were presented on 15 June 1966 and indicted on 20 June 1966. The appellant's trial commenced on 6 October 1967.[1] On 10 August 1966 a hearing was held on the appellant's motion for a speedy trial which he had filed on 20 July 1966 and trial was set for 26 August but on 16 August he filed a motion to dismiss the indictment. The case came on for trial on 26 August and for the first time the State was informed that the appellant desired a jury trial. The court granted a postponement of four days at the request of the State. It appears that the motion to dismiss was not pressed. After the postponement was granted the trial judge noted that the appellant had not been present at the proceedings and ordered him brought to chambers to have the court stenographer read to him what had occurred out of his presence. While this was being done, the judge, observing the conduct and demeanor of the appellant, felt there was some reason to suspect that he may have been a lunatic or insane and referred him to the Medical Service of the Supreme Bench of Baltimore which reported the same day: "Our psychologist * * * was of the definite opinion that Mr. Johnson is not pres-

---

1. Brooks was convicted of murder in the first degree and attempted robbery with a deadly weapon at a court trial which commenced on 7 September 1966, was not concluded on that date and resumed on 18 November 1966. On 28 November 1966 he was sentenced to imprisonment for the term of his natural life on the murder conviction and to 5 years concurrently on the attempted robbery conviction. The judgments were affirmed by this Court. *Brooks v. State*, 2 Md. App. 291.

ently able to stand trial nor to assist his counsel in his own defense". It recommended that the appellant be sent to Clifton T. Perkins State Hospital for treatment and evaluation. The court, over objection of the defense, ordered the appellant to be transferred to that hospital "there to be examined and evaluated for a determination and report to this Court as to whether he is presently able to stand trial and to assist counsel in his own defense".[2] Under date of 11 November 1966 the Superintendent of the hospital reported that in his opinion and that of the Medical Staff the appellant was currently competent to stand trial and "was of such mental capacity and reason at the time of the alleged offenses so as to be properly able to distinguish between right and wrong and to know the nature and consequences of his acts as applied to himself".[3] It was requested that arrangements be made to return the appellant to the custody of the court.

In view of the action of the court in having the appellant examined and evaluated to determine his competency to stand trial, we think it clear that none of the period prior to that determination was chargeable to the State in computing a delay in the constitutional sense in bringing the case to trial. See *Stevenson v. State,* 4 Md. App. 1, 11. In the meantime, the appellant's court appointed counsel had been incapacitated by reason of injuries suffered in an automobile accident about 1 October 1966. On 8 December 1966 the Assistant State's Attorney prosecuting the case wrote counsel that the State was "anxious to set the above case in for trial and requesting 'one or more suitable trial dates' " As it appeared that defense counsel would not be able to proceed with the case for some time, his associate requested the court to appoint other counsel and the court did so on 20 December 1966 with the associate as co-

---

2. The court's authority to so order was provided by Md. Code, Art. 59, § 7 and § 9 then in effect. Chapter 709, Acts 1967, repealed §§ 7-12 and enacted new §§ 7-12 in lieu thereof effective 1 June 1967. The court has like authority under the new statute.

3. That was the test at that time for insanity with regard to criminal responsibility. The current test provided by Chapter 709, Acts 1967, now codified as Art. 27, § 9, applies to cases tried or scheduled for trial on and after 1 June 1967.

counsel. The appearance of the newly appointed counsel was entered on 27 January 1967.[4] He filed a motion to dismiss the indictment for lack of a speedy trial on 30 January, and on the same date entered a plea of insanity and petitioned for further medical examination. Defense counsel made clear that the motion to dismiss was predicated "on the happenings up to and including January 31, 1967". The motion to dismiss was denied at a hearing on 31 January and the motion for further medical examination granted. At the hearing counsel also filed a motion to exclude evidence. The report from a private psychiatrist was rendered on 6 February. The case was set for trial by the State on 9 March but was taken out of the assignment at request of defense counsel. In his brief the appellant states that trial was set in April and was postponed because defense counsel was engaged in previously assigned trials and again on a date in May which was not acceptable to defense counsel who was engaged in a trial in the federal court. On 12 June an Assistant State's Attorney wrote defense counsel:

> "As I have previously advised you, the State is prepared to go to trial in the above-entitled case at the earliest mutually agreeable date.
> I understand that the Defendant elects to have the case tried before a jury. As you no doubt know, the present jury panel term ends on June 16, and there will not be another regular panel available until the two week period from July 24 through August 4.
> If, however, you wish to proceed with trial before the end of July, please advise me promptly as to what dates you will be available, and this office will request the Bench to make a special panel available".

On 21 June the Assistant State's Attorney wrote the jury commissioner that defense counsel had requested trial by a jury the week of 26 June and asked if a special panel could be brought in. The jury commissioner informed the State that the next panel would be available from 24 July through 4 August. On

---

4. The appearance of the associate of the original counsel was entered on 28 September 1967.

26 July the State wrote defense counsel and asked him to suggest a date when he would be available for trial. On 8 September the State wrote defense counsel that in accordance with request of defense counsel that the case be set for trial not later than 20 September, trial had been set for 19 September but that as the State understood that the date was not convenient to the defense, it had been set for 28 September. It was requested that defense counsel inform the State if it could proceed to trial on that date. Trial was again postponed by mutual agreement and the case came to trial on 6 October after a hearing on motion to dismiss the indictment was denied.

The right to a speedy trial is a relative one and the time within which trial must be had to satisfy the constitutional guaranty depends on the facts and circumstances of the particular case. *Kelly v. State,* 2 Md. App. 730. In *Stevenson v. State, supra,* at 11, we set forth the four factors which are relevant to a consideration of these facts and circumstances in determining whether a delay in trial assumes constitutional proportions: (1) the length of the delay; (2) the reason for the delay; (3) prejudice to the accused; and (4) waiver by the accused. We have found that any delay prior to 11 November 1966 was not chargeable to the State. We think that the period from 11 November 1966 to the date of trial was not such a substantial delay as to make a *prima facie* showing of prejudice so as to place a burden on the State of proving both that there was no more delay than was reasonably attributable to the ordinary processes of justice and that the accused suffered no prejudice thereby. Nor do we think that under the facts and circumstances above set forth the delay from 11 November 1966 was reasonably chargeable to the State. Thus the delay was not capricious and oppressive on the part of the State and was not a delay in the constitutional sense. See *Fabian v. State,* 3 Md. App. 270, 285. In any event, the appellants have not shown a "strong possibility" of prejudice as is required when demand for a speedy trial has been made.[5] *Stevenson v. State, supra,*

---

5. As is distinguished from a showing by a defendant of actual prejudice which is required when no demand has been made. *Fabian v. State, supra.*

at 14, 15. The appellant alleges that he was prejudiced by being tried after his co-defendant because the effectiveness of the sequestration of witnesses was "destroyed" and the effectiveness of cross-examination was reduced. If applied as the appellant urges, the State, first trying a defendant, would be precluded from prosecuting a co-defendant. The appellant cites no authority to this effect and we know of none. It is obvious that when a severance is granted, one of the co-defendants must be tried subsequent to the other. We do not find this allegation to be sufficient to show the required strong possibility of prejudice. The appellant also alleges that the action of the trial court in ordering his medical examination prejudiced him by violating his right to a speedy trial. We think it clear that such action is a proper exercise of the court's discretion when it has reason to suspect that a defendant may be a lunatic or insane, and particularly when its suspicion is buttressed, as it was here, by expert opinion on preliminary examination, that the defendant was not able to stand trial or assist his counsel in his defense. In view of our findings we need not consider the factor of waiver.

We hold that the appellant was not denied a speedy trial and that the lower court did not err in denying the motions to dismiss the indictment.

## II

1) Arion England, a witness for the prosecution, admitted on cross-examination that he had been convicted of a crime. At a bench conference out of hearing of the jury, the criminal record of the witness was reviewed and the court stated that it would not permit defense counsel to interrogate the witness "about disorderly conduct convictions or the one as to being drunk or the possession of barbiturates." In the presence of the jury it was brought out that the witness had been convicted of larceny on 21 February 1963 and sentenced to 90 days, of assault on 30 July 1963 and sentenced to 3 months, of assault on 3 May 1965 and sentenced to 6 months, and of assault on 9 January 1966 and fined $50 and costs and committed. The appellant contends that the lower court erred in not allowing the witness to be examined as to his conviction of possession of barbiturates.

It is competent for any party to the proceedings in all cases to prove by legal evidence the conviction of a witness of any infamous crime. Md. Code (1965 Repl. Vol.) Art. 35, § 10. An "infamous crime" is such crime as involved moral turpitude, or such as rendered the offender incompetent as a witness in court. *State v. Bixler,* 62 Md. 354, 360. "The crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery, and those other offenses, classified generally as *crimen falsi,* which impressed upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice." *Garitee v. Bond,* 102 Md. 379, 383. The offender was rendered incompetent as a witness in court on the theory that a person would not commit so heinous a crime unless he was so depraved as to be unworthy of credit. *State v. Bixler, supra,* 360. But by statute no person offered as a witness shall be excluded by reason of incapacity from crime and shall be admitted to give evidence notwithstanding that he "may have been previously convicted of any crime or offense" unless he has been convicted of perjury, in which event he shall not be admitted to testify "in any case or proceeding whatever." [6] Md. Code, *supra,* Art. 35, § 1; *Florentine v. State,* 184 Md. 335. The general rule, however, is that a witness may be cross-examined on matters which test his credibility, *Howard v. State,* 234 Md. 410, 415, and under this rule he may be questioned as to his previous convictions, *Woodell v. State,* 2 Md. App. 433, 438; *Huber v. State,* 2 Md. App. 245, 256. Such evidence of prior convictions is admissible only for the purposes of impeachment and not to prove a fact in issue unless relevant to that issue and not collateral thereto. *Wethington v. State,* 3 Md. App. 237. Evidence of the prior convictions need not be restricted to infamous crimes or those involving moral turpitude, provided the offense may have some tendency to show that the witness is not to be believed under oath. *Taylor v. State,* 226 Md. 561; *Linkins v. State,* 202 Md. 212. The allowance or disallowance of certain questions on

---

6. See Code, Art. 35, § 4 for competency of the accused to testify in proceedings in the nature of criminal proceedings.

cross-examination is normally left to the sound discretion of the trial judge, *Holt v. State,* 3 Md. App. 544, and it is when there is an abuse of discretion to the prejudice of the accused that we must reverse, *Shupe v. State,* 238 Md. 307, 310, 311.[7] In the instant case, the appellant urged that it was not him but England who participated in the crime with Brooks and that the prior conviction of England of possession of barbiturates was admissible to show that England might have been under the influence of narcotics at the time of the commission of the crime. We think that the fact of that conviction, at best, was admissible only under the rule with regard to impeachment of the credibility of the witness and was collateral and irrelevant to the issue of the guilt or innocence of the appellant. The proper object of evidence of the prior convictions of the witness was to discredit him by showing that his character was such as to render his testimony unworthy of belief on the issue of its truth. "In other words, is the witness devoid of moral perception, such a person as would regard lightly the obligations of an oath to tell the truth?" *Burgess v. State,* 161 Md. 162, 172. Evidence of the convictions of the witness for larceny and three crimes of assault were before the jury for such bearing and weight on his credibility as the jury might give it under the circumstances. We are not prepared to say that under these circumstances, the ruling of the lower court was so clearly wrong as to call for a reversal of the judgment. "Especially is this true when it is shown by the record that the jury had the full benefit of inquiry into the witness' past life sufficient to indicate to them the probable character of the witness." *Burgess v. State, supra,* 174.

2) The appellant contends on appeal that the lower court

---

7. For example, when evidence of a prior conviction is allowed and the fact of the prior conviction is clearly irrelevant. Where the conviction was for a crime not infamous, the length of time since it occurred considered with the nature of the crime has been deemed pertinent in deciding relevancy. Where the conviction was for an infamous crime, evidence of it is admissible without reference to the time of its commission for such bearing and weight on credibility the trier of fact may give it. *Cousins v. State,* 230 Md. 2, 4-5.

erred "by refusing to instruct the jury that the test for determining whether a person is an accomplice of a defendant is whether he could be indicted and punished for the same crime." The instructions included the following:

> "Our courts have held that to be an accomplice a person must participate in the commission of a crime knowingly, voluntarily and with common criminal intent with the principal offender or must in some way advocate or encourage the commission of the crime, but the fact that a person witnesses a crime and makes no objection to its commission and does not notify the police does not make him an accomplice."

We do not find in the record that the appellant requested the instruction that he now claims the court refused to give or that before the jury retired to consider its verdict, the instruction given was objected to by the appellant or that he objected to any omission from the instructions regarding accomplices. Therefore, he may not assign the error now alleged as a right of error and we do not consider it. Md. Rules, 756(g). *Hicks v. State,* 3 Md. App. 225, 231. In any event, we find no plain error material to the rights of the accused in the instructions defining an accomplice. See *Watson v. State,* 208 Md. 210, 219.[8]

3) A police officer called by the State testified that between 12:00 midnight and 1:00 A.M. on the day of the crime he observed the appellant and two other boys at a Pixie Shop on the southwest corner of North and Linden Avenues. One of the other boys wore a light tan trench coat. They, with others, were "acting in a disorderly manner." The three boys were "loud and boisterous." He told them that if they were not buying anything to leave. They left and stood on the corner of North and

---

8. The applicant suggested at a hearing on a motion for a new trial that the lower court should have ruled as a matter of law that England was an accomplice. The court stated that the question was one for the jury under the evidence and pointed out that the jury was adequately instructed by the court in its advisory capacity on the law of accomplices and that no exceptions were made to the instructions given.

Linden Avenues. He told them not to loiter and they went to a Little Tavern on North Avenue and Jordan Alley. He told them that "if they weren't buying anything, again they would not be able to hang in the Little Tavern." Later they left. The murder occurred in the 1900 block of Eutaw Place, approximately one and a half blocks away, about 1:30 A.M. On information received by the officer after the commission of the crime two of the boys, one of them being the appellant, were later apprehended. England testified that the appellant and Irvin Brooks were with him when the police officer accosted them in the Pixie Shop and that appellant and Brooks committed the crime. Another State's witness testified that one of the two persons she saw assaulting the deceased wore a light trench coat and the other had on a dark coat. The appellant contends that the testimony of the police officer was not admissible as irrelevant. We think it was relevant as tending to show the identity of the appellant and his presence near the scene of the crime shortly before it was committed, particularly in view of the contention of the appellant that England was an accomplice. The testimony of an accomplice, in order to sustain a conviction, must be corroborated by evidence as to some of the material facts tending to show that the accused was either identified with the perpetrators of the crime or had participated in the commission of the crime. *Boone v. State,* 3 Md. App. 11. The testimony of the officer was clearly relevant as tending to be corroborative of England's testimony, as required in the event the jury found England to be an accomplice. Further there was no prejudice to the appellant in the admission of the testimony as he testified that he, Brooks and England were together at the Pixie Shop and the Little Tavern and left together. We find no abuse of discretion by the lower court in admitting the testimony of the officer.

## III

Arion England, after recounting the events at the Pixie Shop and the Little Tavern, testified that he, Brooks and the appellant walked to the 1900 block of Eutaw Place. "This man was coming across the street, was staggering, drunk, and then we started walking down the street and Brooks, you know,

started saying something and Brooks looked at Johnson and Johnson looked back at him and (Brooks and Johnson) started running down the street * * * Brooks, he grabbed the man and turned the man around and hit him * * * he hit him in the face * * * with his fist." [9] England was about 30 feet away. The appellant was on the man beating him. The man was on the ground. The appellant "had his knee propped down on the man, on his arm." He was beating the man with his fists. A woman looking out a window in a house in front of which the assault was taking place hollered "Police." England started running down Eutaw Place towards Robert Street. The appellant and Brooks started running in the same direction. They stopped running about a block away, saw the police and started running again. Then Brooks said he was going home and England and the appellant walked "up the street" together. England saw blood on the appellant's hands and the appellant said, "I stabbed him" and "he thought he killed him." England saw the appellant the next day. The appellant told England that he had heard on the radio that the man had died and that he was going to leave Baltimore. Brooks was wearing a light trench coat. England said that when the appellant and Brooks were beating the man he hollered to them to leave the man alone.

Rena Lovelace, testified that she lived at 1902 Eutaw Place and about 1:30 A.M. on 12 March was looking out the second floor window of her home. She saw a man "coming down towards Robert Street, and it was two boys in the back of him, and they got right next to my steps. They were right up close on him and he said to the boys, he said, 'Leave me alone. I doesn't have anything' * * * So I watched them shove him on the street and I thought they was just playing until I seen the little boy, the fat one, go in his pocket and take something out of his pocket and went like that (indicating) to the man and I see the blood and I screamed." The boy who "cut him or stabbed him" was kneeling on the man. She hollered that

---

**9.** At the trial of Brooks, England testified that it was Johnson who grabbed the man, turned him around and hit him. Then Brooks ran in and hit him. But his testimony at both the trial of Brooks and the appellant was that it was the appellant who was on top of the man, kneeling on the man's arms, beating him.

she was going to call the police. They jumped up and ran "down Robert Street." She told her daughter to call the police. One of the boys had on a light trench coat with a belt in the back and the other had on a dark coat. She only saw two boys and the man.

It was stipulated that the body of Oscar Lewis, the person named in the indictments, was the same body of a male taken from in front of 1900 Eutaw Place to Provident Hospital where he was pronounced dead on arrival at 2:00 A.M. on 12 March 1966. The autopsy report disclosed nine stab wounds in his head and neck and that the blood alcohol content was 0.22 per cent. It was the opinion of the Medical Examiner that Oscar Lewis died of aspiration of blood from a stab wound of the neck and that the manner of death was homicide. The deceased had on his person a wallet, personal papers and $6.95.

The appellant testified that he and Brooks and England were together at the Pixie Shop and the Little Tavern on the night in question. They left the Little Tavern and walked down North Avenue. He then left Brooks and England, went to a girl's house on Bolton Street but she was not there. He went home. He denied telling England he had stabbed a man, denied stabbing Oscar Lewis and denied having a knife. Brooks was wearing a light Barracuda trench coat. England was wearing a dark sweater. The appellant was wearing a dark gray coat. He had a previous criminal record of assault, attempted larceny and larceny.

The appellant urges that the evidence was not sufficient to sustain the convictions but directs his argument in his brief to the contention that England was an accomplice whose testimony was not corroborated.

> "An accomplice is one who knowingly, voluntarily, and with common interest with the principal offender, participates in the commission of a crime either as principal or as accessory before the fact. * * * But the fact that a person witnesses a crime and makes no objection to its commission and does not notify the police does not make him an accomplice. To be an accomplice a person must participate in the com-

mission of a crime knowingly, voluntarily, and with common criminal intent with the principal offender, or must in some way advocate or encourage the commission of the crime. * * * [A]n accessory after the fact is not an accomplice * * *." *Watson v. State,* 208 Md. 210, 217, 219, 220.

We think that the jury, from the evidence before it, could properly find that England was not an accomplice. There was no evidence that there was a pre-arranged plan to which England was a party to rob or assault the deceased or that England participated in the crime or advocated or encouraged its commission. Therefore, his testimony need not have been corroborated and his identification of the appellant was sufficient to prove the criminal agency of the appellant. *Reed v. State,* 1 Md. App. 662, 664. We feel that the evidence was sufficient to prove the *corpus delicti* of both murder in the first degree and attempted robbery with a deadly weapon. From the evidence the jury could have properly reached its verdict of murder in the first degree by finding that the homicide was wilful, deliberate and premeditated, Md. Code, (1967 Repl. Vol.) Art. 27, § 407; *Leyva v. State,* 2 Md. App. 120, or that it was committed in the attempt to perpetrate a robbery, *Code, supra,* Art. 27, § 410; *Shockley v. State,* 218 Md. 491; *Stansbury v. State,* 218 Md. 255. We said in the companion case of *Brooks v. State, supra,* at 296, in which the evidence was the same in its material aspects:

> "We think that the evidence would at least support an inference that there was an attempt to rob the deceased. There was no evidence of an argument or altercation before the brutal assault, that there was ill-will between the deceased and his assailants or in fact that he even knew them, or that the assault was provoked by other than an attempt to rob. The attack was from the rear and began by grabbing the victim by the shoulders to spin him around and by blows to the face. Although, if any words were spoken by the assailants, they were not overheard, the victim cried out on two occasions, 'You all leave me alone, I

> doesn't have anything.' The purpose of the assailants was not completed only because of the intervention of Mrs. Lovelace. The incident followed the all too familiar pattern of a typical yoking of a drunken man, but with murder as the end result."

And there was credible evidence that a deadly weapon was used in the attempted robbery, a weapon the use of which inflicted a stab wound on the victim causing his death. We have found that there was legally sufficient evidence or inferences drawable therefrom to prove the *corpus delicti* of murder in the first degree and attempted robbery with a deadly weapon and to prove the criminal agency of the appellant as to each of those crimes. Thus the jury could properly find the appellant guilty beyond a reasonable doubt and we may not overturn the judgments entered for insufficiency of the evidence. *Agresti v. State,* 2 Md. App. 278.

The appellant claims inconsistencies in the testimony of the State's witnesses. But such contradictions in testimony go to the weight of the evidence. *Borman v. State,* 1 Md. App. 276; *Whitmer v. State,* 1 Md. App. 127. This Court does not inquire into and measure the weight of the evidence which is a matter for the jury. *Thompson v. State,* 4 Md. App. 31.

*Judgments affirmed.*