## JAMES TUBBY EDWARDS AND MICHAEL F. PERSON v. STATE OF MARYLAND

[No. 773, September Term, 1975.]

*Decided June 4, 1976.*

The cause was argued before MORTON, GILBERT and MOORE, JJ.

*Arnold M. Zerwitz, Assistant Public Defender*, with whom were *Alan H. Murrell, Public Defender*, and *Victoria A. Salner, Assistant Public Defender*, on the brief, for appellants.

*Gilbert Rosenthal, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Stephen Tully, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Appellants, James Tubby Edwards and Michael F.

("Pick") Person, were charged under multi-count indictments after the fatal shooting of a bartender, the shooting of a patron and the robbery and attempted robbery of other patrons and employees in a holdup of the Hitching Post Bar in Baltimore on June 9, 1974. After a jury trial in the Criminal Court of Baltimore (Ross, J., presiding) both appellants were found guilty of first degree murder, assault with intent to murder, armed robbery, attempted armed robbery and three handgun violations. Thereafter each was sentenced to a term of imprisonment for life plus 20 years. A detailed recitation of the facts is unnecessary because on appeal Edwards and Person urge us to reverse their convictions on the following grounds:

1) The allegedly improper use of a statement given by a State's witness, James VanLandingham, to the police on July 1, 1974; and

2) the allegedly erroneous allocation of the burden of proof in violation of *Mullaney v. Wilbur*, 421 U. S. 684 (1975).

For the reasons stated below, we reject appellants' contentions and affirm in each instance the judgments of conviction.

I

The State called as its first witness, Rosalind Karloff, an employee of the Hitching Post Bar, and elicited from her an eyewitness account of the crimes. She was followed to the stand by James VanLandingham, summoned to testify concerning statements allegedly made by and between the appellants on the day following holdup. After testifying that he saw Tubby (appellant Edwards) with a revolver in his belt, he said he then accompanied Edwards to "Pick's" house (appellant Person). In response to the State's first question as to what, if any, conversation between the two appellants he overheard on that occasion, VanLandingham responded tersely:

". . . Tubby [appellant Edwards] hollered up to Pick

[appellant Person] . . . , 'Did you take care of that thing, man?' And Pick said, 'Yeah, I took care of it.' "

Subsequent efforts by the State to elicit further details with respect to Tubby's disposition of the gun were unavailing and the State then produced the statement given by the witness to the police, and asked if he recognized his signature. Repeated objections were interposed by defense counsel to any use of the statement and there ensued both bench conferences on the issues raised and the taking of the witness' testimony out of the presence of the jury. During the course of these proceedings, it came out that VanLandingham was unable to read, a fact not disclosed by him when he was first permitted by the court, over objection, to examine his statement to refresh his recollection. Ultimately, in the presence of the jury, the witness was examined by the State as follows:

"(By Mr. Tully) Mr. Vanlandingham, I'm going to read to you from certain portions of your statement, and I'm going to ask you if, in fact, those were correct. All right. So, I want you to listen to me. I am reading from the statement that you have verified that you signed.

Now, question by the police: 'Did you ever see Tubby with a gun?'

Answer by you: 'I think that it was the night after the shooting. I had met Tubby in Lafayette Projects and he was carrying a automatic, it was stuffed down in his pants. He asked me if I knew anyone who wanted to buy a pistol. I told him, no. So we went to the 1035 building, and he told me to wait. It was about five minutes later that he came back. I didn't see the pistol, and he had two bags of stuff, so I guess that he sold the pistol for the two bags.'

Question: 'Did you ever see Tubby and Pick together?'

Answer: 'It was the same night that he sold the pistol. I was with Tubby and he went around to Pick's building, 131 Aisquith Street, ninth floor. Tubby was talking to Pick, and he told him, 'You know that the man is looking for us, so whatever you got, get rid of.' Pick said, 'Don't worry about it.' And we left. That's the last time that I saw either one of them.'

Question: 'Did Tubby ever tell you that the gun he had was hot?'

Answer: 'Yes, he did say that it was hot.'

Now, were those the answers that you gave the Police Department on your statement?

A   Yes, sir."

Emphasizing the obviously damaging nature of this testimony, appellants contend that reversible error was committed when portions of the statement were allowed "directly into evidence."

In the first instance, it must be noted that the statement taken by the police and signed by the witness was not permitted by the court to be received into evidence, although the entire document was offered by the State. The court refused to admit the full statement because it contained extraneous matter also of a prejudicial nature. Secondly, although counsel for the respective appellants had, as indicated above, interposed numerous objections to the introduction or other use of the statement, when it was finally employed in the interrogation of the witness quoted above, no objection was made. The issue has therefore not been properly preserved for appellate review. Maryland Rule 1085. For this reason, we would ordinarily not consider the substantive issue raised. Here, however, appellants' contention that a lack of present recollection must be established before a writing may be used as past recollection recorded, affords us the opportunity to restate the Maryland rule as enunciated in *Hall v. State*, 223 Md. 158, 162 A. 2d

751 (1960); and to correct our statement of the rule in *Wilson v. State*, 20 Md. App. 318, 315 A. 2d 788 (1974) upon which appellants rely.

In *Hall*, the appellant had been found guilty of murder in the first degree after a jury trial in the Circuit Court for Baltimore County and sentenced to death. While in the custody of the police at the Parkville Police station in Baltimore County he made two inculpatory statements, the first of which was prepared in longhand by Detective Davis. The second was a question and answer interview by a Baltimore County Police Captain taken down by Mr. Perkins, a court reporter for the Circuit Court for Baltimore County (not acting in his official capacity). At the time of trial, Perkins had with him both his original stenotype notes and a transcription. The main contention of appellant was that witnesses Davis and Perkins should not have been permitted to testify from their records about the appellant's confessions. Writing for the Court, Chief Judge Brune pointed out that the problem fell within the class of evidence denominated by Wigmore as "past recollection recorded." He observed that while there is considerable diversity of opinion on the subject, it is clear that a witness who heard the statement of appellant Hall could either testify from recollection as to what was said or use his notes made at the time to refresh his recollection. It was further noted with respect to the recollections of the detective and the court reporter that:

> "The problem in this case arises as to Detective Davis because he felt that he could testify with considerably greater accuracy from his notes than from his recollection, even from his recollection as it might be refreshed by his notes. Mr. Perkins had no independent recollection of what the defendant had said." 223 Md. at 172-173.

The Court held that there was no error in permitting the detective virtually to read his notes in evidence or in permitting the court reporter to read from his stenographic notes. "Indeed," Chief Judge Brune stated, "we think the

trial court might well have admitted Detective Davis' original notes and Mr. Perkins' original notes and a correct transcription thereof into evidence as documents." *Ibid.*, at 177.

In *Hall,* the Court drew upon *Kinsey v. State,* 65 P. 2d 1141 (Ariz. 1937); 3 Wigmore, *Evidence* (3d. ed.) §§ 725-757; and the Maryland case of *Owens v. State,* 67 Md. 307, 10 A. 210 (1887). The Court quoted extensively from the opinion of Chief Judge Alvey in *Owens,* including the following:

> *"It has been urged in argument that the entry or memorandum can only be used where the witness has no present independent recollection of the transaction referred to. But its admissibility depends upon no such distinction. If the witness swears that he made the entry or memorandum in accordance with the truth of the matter, as he knew it to exist at the time of the occurrence, whether he retains a present recollection of the facts or not, the entry or memorandum is admissible;* for though he may have a present recollection, (of doubtful or varying degree of certainty, it may be,) independently of the memorandum, the paper is admissible as means of verification or confirmation of what he states from memory. This is the clear logical deduction from the cases cited. Few men are so gifted with the powers of memory as to be able to recall the details of past transactions with perfect accuracy, especially when such transactions involve great numbers of names, dates, amounts, etc., and *therefore the best recollections, and the greatest degree of self-reliance in the statement of past facts, may derive force and reliability from truthful memoranda made at the time of the transaction; and the law always prefers that evidence which insures the greatest degree of certainty in the establishment of truth."* 223 Md. at 176. (Emphasis added.)

Appellants rely on our decisions in *Wilson v. State, supra*

and *Askins v. State*, 13 Md. App. 702, 710, 284 A. 2d 626 (1971) to support a contention that "[t]he contents of the memorandum are admissible (under the theory of past recollection recorded) only where the witness testifies that he has *not* sufficient present recollection of the facts to testify accurately thereto." (Emphasis in original.)

As Professor Chadbourn noted in his 1970 revision of 3 Wigmore on *Evidence* § 738, n.5 at 93, the *Hall* case puts Maryland in the minority position (preferred, however, by Wigmore), *viz.*, that where a proper foundation is laid a past recollection recorded is admissible without regard to the state of declarant's recollection at the time of trial. Wigmore says of the Maryland rule that it is

> "more in harmony with general experience, as well as with the attitude of the judges who early vindicated the use of past recollection. A faithful memorandum should be acceptable not conditionally on the total or partial absence of a present remnant of actual recollection in the particular witness, but *unconditionally*; because, for every moment of time which elapses between the act of recording and the occasion of testifying, the actual recollection must be inferior in vividness to the recollection perpetuated in the record." (Emphasis in original.) Wigmore, *supra* at 91.

The majority view, called by Wigmore "The New York Doctrine" (Wigmore, *supra*, § 738) — that a present recollection must first appear to be lacking before a writing may be used as a past recollection recorded — is criticized by the learned author as "an inferior qualification unknown to the orthodox doctrine and unapproved by good sense." (§ 738 at 91).

In the instant case the witness VanLandingham testified that his wife was present when his statement to the police was completed, that she read it to him before he signed it and that it was correct. The evidence also showed that the statement was given at a point in time proximate to the date

when the conversations between the two appellants took place. All the criteria for a proper foundation were satisfied.[1] The fact that the statement was manually prepared by another, the police officer, is immaterial. As Wigmore states:

> "It may have been manually prepared by another; but from the moment when the witness saw it and passed judgment upon its correctness, it became for him a correct record. As the mere fact of his writing it would count for nothing in itself, so the mere fact of his not having been the writer is immaterial." Wigmore, *supra*, § 748 at 101.

Accordingly, the statements of VanLandingham to the police officer were correctly admitted by being read to the witness in the presence of the jury. In addition, it was a proper exercise of the trial court's discretion that the transcription of the statement not itself be received in evidence. Wigmore, § 755 at 125.

Our statement of the law in *Wilson v. State, supra*, 20 Md. App. at 330, is at variance with the rule enunciated in *Hall v. State* and to that extent *Wilson* is overruled. With respect to appellants' reliance upon *Askins v. State, supra*, it need only be noted that the narrow holding in *Askins* was that there was no abuse of discretion on the part of the trial judge in permitting a witness to refresh his memory from a memorandum, and that the discussion of past recollection recorded is dictum.

## II

Appellants contend that *Mullaney v. Wilbur, supra*, requires a reversal of the instant convictions because

> "the use of the words 'presumption of malice' and 'presumption of murder', coupled with the words to the effect that the burden is on the accused to

---

1. *See*, Wigmore *op. cit., supra*, § 744, *et seq.*, with respect to the requirement of a proper foundation or, as described by Wigmore, "Rules to secure adequacy of past recollection and correctness and identity of record."

negate malice, implies to the jury that malice may be found to exist on proof less than beyond a reasonable doubt [and] [t]he State's burden of proof is thus unconstitutionally diluted."

Because the jury returned a verdict of murder in the first degree such instructions, although incorrect, *Evans v. State,* 28 Md. App. 640, 349 A. 2d 300 (1975), *cert. granted,* February 17, 1976, were not reversible error since the court had accurately apprised the jury of the State's burden to prove the elements of first degree murder beyond a reasonable doubt in order to obtain a verdict of murder in the first degree. *Brown v. State,* 29 Md. App. 1, 349 A. 2d 359 (1975).

*Judgments affirmed.*