# THOMAS GLENN CONNER *v.* STATE OF MARYLAND

[No. 261, September Term, 1976.]

*Decided December 7, 1976.*

The cause was argued before POWERS, MASON and LISS, JJ.

*Robert J. Kniaz*, with whom was *Robert E. Ammons* on the brief, for appellant.

*Bruce C. Spizler, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County*, and *Franklin D. Henderson, Assistant State's Attorney for Prince George's County*, on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

The appellant, Thomas Glenn Conner, was charged in a single indictment with three violations of the criminal law. They were: 1st count, motor vehicle larceny; 2nd count, receiving stolen goods; and 3rd count, possession of a manufactured article whose serial number had been removed or altered.

On June 7, 1975, Corporal Jahn of the Prince George's County Police Department was in a marked county police car routinely patrolling the Bladensburg area. A passenger in his vehicle was Thomas Blair, an assistant State's Attorney for Prince George's County. There apparently was no special significance to Blair's presence in the car other than as a testimonial to his zeal beyond the call of duty.

Corporal Jahn and his passenger observed a Harley-Davidson motorcycle, which they later determined

was being operated by the appellant, proceeding at a rate of speed substantially higher than that permissible in the area. It is conceded that Conner was exceeding the speed limit. The police officer stopped the appellant and requested him to produce his driver's license and registration card. Conner gave the officer a "completely obliterated" District of Columbia driver's license, as well as a driver's license from Virginia, and an Alabama registration slip in the name of Gerald King. Corporal Jahn gave the registration slip to Blair who walked to the opposite side of the motorcycle and compared the numbers on the registration slip with those on the motorcycle frame and engine housing of the vehicle. These numbers were visible on the outside of the motorcycle. Blair had some experience with motorcycle identification in his position as an assistant State's Attorney; he verified that the numbers on the frame and housing were identical, but he noticed that they had been stamped in a die not usually found on Harley-Davidson motorcycles.[1]

Blair called this fact to Jahn's attention whereupon Jahn checked Conner's license status through the computer at the Motor Vehicle Administration and learned that Conner had been refused a license to operate a motor vehicle in Maryland. The appellant was requested to follow Corporal Jahn to the Hyattsville station for further investigation. At the station Corporal Bruciak, an auto theft investigator for the county police, made a further examination of the vehicle and discovered that the frame number was stamped in a standard die stamp — not the "posident" die. In addition, the number was not enclosed with a star in front of the number and a star at the end of the last number as was the practice of Harley-Davidson. There was evidence that the original number on the vehicle had been obliterated. Corporal Bruciak checked a "secret" number located near the crankcase of the vehicle and obtained from that location a different identifying number. Investigation disclosed that one Jeffrey Ashe had reported a motorcycle owned by him, bearing that number, to have been stolen. On the basis of this

---

1. Harley-Davidson stamped its vehicles at the factory with a "posident" die not generally available to the public. Blair testified that the die on this motorcycle seemed to be the kind available in a hardware store.

information the charges previously recited were placed against the appellant.

Prior to trial the appellant filed a motion to suppress all the evidence obtained as a result of the search and seizure of the motorcycle on the grounds that the search and seizure was without a warrant and without probable cause and that the appellant did not consent to the search.

A hearing was held on the motion to suppress and the motion was denied. On a later date, trial was had before a jury (Mathias, J., presiding) and the appellant was found not guilty of the larceny charged in the first count of the indictment but was found guilty of receiving stolen goods and possession of a manufactured vehicle whose serial number had been removed or altered. After a motion for new trial was denied, sentences were imposed and it is from these judgments that this appeal was filed.

I

The appellant urges six grounds for reversal. We have considered each of them and for the reasons detailed *infra,* we have determined that they are without merit. We shall affirm.

The first question raised by the appellant in this appeal is: Did the trial court err in denying the appellant standing to raise the issues urged by the appellant in his motion to suppress? [2] We have in this instance a classic case of a correct result reached for an incorrect reason. The judge who heard the motion to suppress relied on the legal principles enunciated by this Court in *Duncan and Smith v. State,* 27 Md. App. 302, 340 A. 2d 722 (1975). He held that Conner, in possession of recently stolen goods, did not have standing to raise the issue of the alleged illegal search and seizure. Several months later the Court of Appeals had *Duncan* before it on certiorari.

The Court in *Duncan and Smith v. State,* 276 Md. 715, 351 A. 2d 144 (1976), vacated our judgment and remanded the case for a determination as to whether the search and

---

**2.** This ruling was made in advance of trial by another trial judge who did not preside at the trial on the merits.

seizure was proper. In its opinion, Judge Smith, speaking for the Court, held that when the possession of the evidence is in itself an essential element of the offense charged against the accused, the State is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence. The Court held that *Jones v. United States*, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), was still controlling law in Maryland, and that under the circumstances the defendant had automatic standing to raise the issue of the validity of the search and seizure.

The subsequent decision of the Court of Appeals in *Duncan and Smith v. State, supra,* makes it obvious that the trial court's reason for the denial of the motion to suppress was incorrect.

The appellant has consistently argued that the search and seizure of his motorcycle was illegal because of the proscriptions of the Fourth and Fourteenth Amendments to the United States Constitution.

Our appellate review is limited to the evidence that was submitted to the trial court, out of the presence of the jury, at the hearing on the motion to suppress the evidence obtained as a result of the search of the motorcycle. *Glover v. State*, 14 Md. App. 454, 287 A. 2d 333 (1972). We have reached the conclusion that the trial court's denial of the motion to suppress was correct.

*Cardwell v. Lewis*, 417 U. S. 583, 94 S. Ct. 2464, 41 L.Ed.2d 325 (1974), was before the Supreme Court on certiorari from the United States Court of Appeals, Sixth Circuit. In a habeas corpus proceeding, the United States District Court for the Southern District of Ohio had ruled the warrantless examination of the exterior of a vehicle was a search violative of the Fourth and Fourteenth Amendments.[3] The Sixth Circuit affirmed.[4] The Supreme Court in a plurality opinion reversed.[5] The case arose out of the murder of a

---

3. Lewis v. Cardwell, 354 F. Supp. 26 (S.D. Ohio, 1972).
4. Lewis v. Cardwell, 476 F. 2d 467 (6th Cir. 1973).
5. Mr. Justice Blackmun, the Chief Justice, Mr. Justice White and Mr. Justice Rehnquist were in the plurality. Mr. Justice Powell concurred in the result because of his belief that federal collateral review should not be available on the merits of a Fourth Amendment ques-

victim who had died as a result of shotgun wounds. Tire tracks from a vehicle other than that in which the deceased's body had been found were discovered at the scene. Casts were made of these tracks and, in addition, foreign paint was removed from the right rear fender of the vehicle in which the deceased was found. An investigation over a period of several months indicated that there was probable cause to believe Lewis was involved in the homicide. Lewis was arrested by law enforcement officers who had secured an arrest warrant for his person. After his arrest, Lewis' car keys and a parking lot claim check were released to the police. A tow truck was dispatched to remove the car from the parking lot where it had been left by Lewis, and the car was taken to the police impoundment lot. There a technician made a cast of the right rear tire of the vehicle, and it was found to match the cast of the tire taken at the scene. In addition, paint samples scraped from Lewis' vehicle were found to match those of the paint on the victim's car. Both the District Court and the Sixth Circuit Court of Appeals held that the evidence obtained should have been excluded on the grounds that the scraping of the paint from the exterior of the car was an unlawful search, that it was not incident to the arrest, and that the seizure of the car could not be justified as a seizure of an instrumentality of a crime in plain view.

Mr. Justice Blackmun, writing for the plurality, said at page 589, 90:

" 'The decisions of this Court have time and again underscored the essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusions into his privacy . . . .' At least since *Carroll v. United States,* 267 U. S. 132 (1925), the Court has recognized a distinction between the warrantless search and seizure of automobiles or other movable vehicles, on the one hand, and the search of a home or office, on the other. Generally

tion. Mr. Justice Stewart delivered the dissenting opinion on behalf of the four justices who dissented.

less stringent requirements have been applied to vehicles .... '[T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. *Chambers v. Maroney*, 399 U. S., 50-51.' " (citations omitted).

At page 592 Mr. Justice Blackmun continued:

"Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments."

The main thrust of the plurality opinion was that the Fourth Amendment was inapplicable. The Court said at pages 588-589:

"The evidence with which we are concerned is not the product of a 'search' that implicates traditional considerations of the owner's privacy interest. It consisted of paint scraping from the *exterior* and an observation of a tread of a tire on an operative wheel. The issue, therefore, is whether the examination of an automobile's exterior . . . invades a right to privacy which the interposition of a warrant is meant to protect." (Emphasis in original).

The plurality opinion went on to conclude that a citizen had no constitutional expectation of privacy in the exterior of an automobile. At page 591 the opinion stated:

"In the present case, nothing from the interior of the car and no personal effect, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence. With the 'search' limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle

left in the public parking lot, we fail to comprehend what expectation of privacy was infringed." [6]

We agree with this reasoning. We find no reasonable expectation of privacy in serial numbers stamped on a motorcycle readily visible to a cursory inspection. Under the circumstances, we find the rights guaranteed under the Fourth Amendment inapplicable. Though the ground for the denial of the motion to suppress was incorrect, the action of the Court was proper for the reasons we have stated.

## II

The appellant next contends that the trial court committed reversible error in admitting Ashe's Virginia title and warranty cards since he contends that they were the only pieces of documentary evidence which enabled the State to prove that the correct vehicle identification number (serial number) on the motorcycle was the same as the number on the vehicle which had been stolen from Ashe.

Ashe identified the title as the *original* Virginia title to his motorcycle. The warranty card was furnished to him at the time of purchase. These were the personal records of the owner and admissible as direct evidence. Assuming, arguendo, that it was error to admit these documents, the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967); *Dorsey v. State,* 276 Md. 638, 350 A. 2d 665 (1976). The record reveals that the information as to the serial numbers was testified to by a factory representative of Harley-Davidson. His testimony established that the vehicle identification number found on the exterior of the seized motorcycle was not the same number assigned to the vehicle sold to Ashe. The owner, Ashe, identified the motorcycle as being his property by three different identifying marks: a dent on the front fender, markings on the rear fender caused by a loose chain, and markings on the engine block made during repairs on the motor. The testimony as to the title and the

6. See, Moylan, The Automobile Exception: What It Is and What It Is Not — A Rationale in Search of a Clearer Label, 27 Mercer L. Rev. 987 (1976).

warranty card was cumulative and its admission was not prejudicial.

## III

For convenience, we shall consider together the appellant's third and fifth suggestions of error. In the third complaint, the appellant contends that the oral testimony of Corporal Bruciak, a police officer, concerning the manufacturer's "secret" serial number located in a "secret" place on the motorcycle should not have been admitted under the "Best Evidence Rule." The fifth complaint is that the trial court restricted the cross-examination of Corporal Bruciak as to the actual location of the "secret" number and that this restriction amounted to reversible error.

From our reading of the record, it is obvious that counsel for the appellant attempted, by his objections, to force the State to steer a dangerous course between Scylla and Charybdis.[7] The appellant urged that the trial court require the State to prove the "secret" number either by bringing in the motorcycle and demonstrating its position, or at the very least requiring the production of a photograph which would show the location of the number. On cross-examination it was established that the "secret" number was in the general area of the crankcase of the vehicle, but the Court refused to permit any additional testimony which would have finally pinpointed its actual position on the motorcycle. To have required the State to comply with the appellant's trial tactics would have been to destroy the usefulness nationwide of the "secret" number.

The rulings made by the trial court were within the

---

7. Homer's *Odyssey* (Latimore translation) Book 12, lines 220-270. One of the hazards of Ulysses' journey was to traverse the narrow channel between Scylla, the six-headed monster who sat on a rock, and Charybdis, another monster who by sucking in water created a whirlpool. In avoiding the whirlpool Ulysses passed *too* close to Scylla who seized six of his sailors and ate them.

Jason and his Argonauts had a somewhat more successful adventure with the clashing rocks which guarded the entrance to the Bosporus Straits. By following the advice of Phineas to send a dove between the rocks first he was able to traverse the passageway without injury to his ship or his sailors. The dove lost a few tail feathers and his dignity.

bounds of its discretion. Wigmore, in discussing the Best Evidence Rule at Section 1182 (Chadbourn Rev. 1970), said:

> "It is impossible to say that any settled doctrine has found favor respecting the application of the rule to *material objects*, not paper, *bearing inscriptions in words* .... The rational and practical solution is to allow the trial court in its discretion to require production of an inscribed chattel wherever it seems *highly desirable* in order to ascertain accurately a *material fact*." (emphasis added)

Our Court of Appeals in *General Builders v. MacArthur*, 228 Md. 320, 327, 179 A. 2d 868, 872 (1962), indicated the flexibility to be applied to the Best Evidence Rule when it said:

> "[W]here it is not shown by the objecting party that there is a higher grade of available evidence, which, if produced, would *more satisfactorily explain and establish a fact than the evidence offered*, then the evidence actually produced should not be excluded on the ground that it is secondary evidence. See 32 C.J.S. *Evidence*, Section 780; *Billeter v. Halsam Products Company*, 38 N.E.2d 994 (Ill. 1942) . . . ." (emphasis added)

Similarly, the scope of cross-examination is within the discretion of the trial judge, and grounds for reversal will occur only when there is an abuse of that discretion. *Kable v. State*, 17 Md. App. 16, 299 A. 2d 493 (1973); *Johnson v. State*, 4 Md. App. 648, 244 A. 2d 632 (1968); *Holt v. State*, 3 Md. App. 544, 240 A. 2d 355 (1968).

The trial court restricted cross-examination as to the exact location of the "secret" number after noting the need for confidentiality to preserve the ability of law enforcement officials to prosecute offenders for the theft of vehicles. *Gurleski v. United States*, 405 F. 2d 253 (5th Cir. 1968), *cert. denied*, 395 U. S. 981, 89 S. Ct. 2140, 23 L.Ed.2d 769 (1969), was a case in which the appellant insisted the trial court

committed reversible error by not allowing him to cross-examine an FBI agent as to the location of the secret identification number.

The Court in rejecting the appellant's contention said at page 266:

> "Just as the prosecution need not generally divulge the name of an informer unless some materiality is shown, they need not reveal the location of these marks, which are a highly valuable tool to law enforcement officers in discovering and solving car thefts."

The record reveals an even more compelling reason for finding that the trial court did not abuse its discretion in refusing to allow the cross-examination of the Corporal as to the "secret" number. The evidence as to the existence and location of the "secret" number was irrelevant to the appellant's defense. There was already in the record evidence more than sufficient to identify the "bike" as the one owned by Ashe which had been stolen from him. It is significant that the defense offered by the appellant, through the only witness called on his behalf, was that the appellant had purchased a similar motorcycle from a man named Gerald King. Considering the nature of the "secret" number and the patent justification for its confidentiality, the appellant has failed to convince us that it would have been "highly desirable" to require the production of the motorcycle or a photograph depicting the "secret" number. It would have been even less desirable to permit cross-examination as to its location.

## IV

The appellant complains that the trial court erred in permitting the owner of the vehicle to refer to a "warranty card" when testifying as to the serial number of the motorcycle. There is no merit to this contention. This is clearly an instance of present recollection revived in which the witness was permitted to use the writing to refresh his recollection so that he might testify about past events from

present recollection. In *Askins v. State,* 13 Md. App. 702, 284 A. 2d 626 (1971), *cert. denied,* 264 Md. 745, this Court held that it is within the sound discretion of the trial court to permit a witness to use a memorandum or any other object as a stimulus to present memory, without restriction by rule as to authorship, guarantee of correctness, or time of making. *cf. Edwards and Person v. State,* 31 Md. App. 562, 358 A. 2d 590 (1976).

V

The appellant's final ground for reversal is his contention that the assistant State's Attorney who tried the case made impermissible comments on the defendant's failure to testify. A reading of the record indicates that at one point the prosecuting attorney in his argument did say, "the defendant must prove to you that it wasn't recently stolen property." Defense counsel objected, a bench conference was held and the trial court then instructed the jury that while there was an inference of guilt raised by the possession of recently stolen property, the prosecutor's statement that "the defendant must prove" was "completely inconsistent with the law." The jury was instructed by the Court to disregard the statement "the defendant must prove." The prosecuting attorney in continuing his argument corrected his terminology and stated "he must give a reasonable explanation for his possession." The appellant contends, however, that the use of the pronoun *he* in connection with statements "he did not explain his possession," and "he had no reasonable explanation for having the bike" were impermissible comments on the appellant's failure to testify in his own behalf. No objection to the offending language was made in the trial court, nor did the appellant request any correction of the allegedly improper language even though the trial court had acted promptly in the one instance where objection was made. A failure to object and to request the Court's correction is a waiver of the contention for appellate review. Maryland Rule 1085.

Our review of the closing argument convinces us that the appellant's construction of the effect of the offending

language is not justified. We believe *Sizemore v. State*, 5 Md. App. 507, 248 A. 2d 417 (1970), is dispositive of the appellant's argument.

*Judgments affirmed.*
*Costs to be paid by appellant.*