505 A.2d 557

**Stephen Donnell SANDERS**

v.

**STATE of Maryland.**

**No. 701, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 7, 1986.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and James Salkin, Asst. State's Atty. for Baltimore City, on brief), for appellee.

Submitted before WILNER, ALPERT and BLOOM, JJ.

ALPERT, Judge.

His name was Seth Key. He was a twenty-one year old college student who worked the night shift at an Amoco Station at North Avenue and Belair Road in Baltimore City. In the early morning hours of July 9, 1980, his body was found on the bathroom floor of the self-service station. He died of three gunshot wounds: one to the left ear, one to the neck, and the third to the back.

Stephen Donnell Sanders, the appellant, was charged with the first degree murder of Seth Key and other related

offenses. He was tried by a jury in the Circuit Court for Baltimore City on February 4–8, 1985 (Pines, J., presiding) and was convicted of murder in the second degree, robbery with a deadly weapon, and the use of a handgun in the commission of a crime of violence. As a result of the convictions, appellant was sentenced to consecutive terms of thirty years for second degree murder, twenty years for robbery with a deadly weapon, and twenty years for use of a handgun in the commission of a crime of violence. Consistently maintaining his innocence, he has noted an appeal and vigorously asserts that (1) the trial court erred in admitting an extra-judicial statement under the past recollection recorded exception to the hearsay rule, (2) appellant's uncorroborated extra-judicial "confession" was insufficient to sustain his conviction, and (3) appellant was denied a fair trial by the prejudicial nature of the prosecutor's closing argument. Because we perceive no reversible error, we shall affirm.

## THE FACTS

The *corpus delicti,* as described earlier in this opinion, is not disputed on appeal. Rather, it is the appellant's criminal agency that is steadfastly contested. Cedric Fisher and Ashley Campbell, two neighborhood drug dealers, were the State's key witnesses. Without them, the State would have no case. Therefore, their credibility was the major issue at trial. Both Fisher and Campbell testified that they completed a drug transaction with the appellant on the night of the murder and that during the course of that transaction Sanders made the fatal admissions which ultimately led to his conviction.

Let us set the scene. For approximately 1½ years Fisher and Campbell had been selling drugs in an alley behind Campbell's house. This location was approximately five blocks from the scene of the murder at North Avenue and Belair Road. According to Fisher, he had seen the appellant, whom he knew by the name of "Step," between 3:00 and 5:30 A.M. on the morning of July 9, 1980. Step

purchased a quarter-pound of marijuana, for which he paid approximately $120.00. Fisher further testified that Step had told him that about one hour beforehand he had "made a move" at the gas station at North and Belair, and that because the guy "bumped on him," he "had to pop him." Translated, this meant that the appellant committed a crime at the gas station, was jumped during the commission of the crime, and shot the person who jumped him. At the time of this conversation, according to Fisher, appellant had in his possession two handguns.

On July 10, 1980, the day after the incident involving appellant and Seth Key, Fisher was arrested, having been charged with burglary. Several days later, while residing at the Baltimore City Jail, he gave a statement to Detective Howard Corbin of the Baltimore City Police Department, which included a detailed description of the discussion and transaction that had taken place among appellant, Fisher and Campbell on July 9, 1980. It is the introduction of that statement following Fisher's testimony that forms the basis of appellant's argument as to the first issue.

Ashley Campbell, Fisher's partner in crime (the drug dealership), while incarcerated for armed robbery in 1984, also gave a statement to the police. Campbell's in-court testimony, although conflicting with that of Fisher as to some minor details, was substantially the same as Fisher's insofar as it concerned appellant's admission that he had committed the robbery at the gas station and had shot the attendant there. After the State completed its case, the appellant, Stephen Donnell Sanders, took the witness stand, denied committing the murder, denied that he was even in Baltimore on the night of the murder, and denied ever buying narcotics from either Fisher or Campbell.

I.

After Fisher testified on direct examination, he was vigorously cross-examined with regard to his statement to the police and details related thereto. Although the State takes

a different point of view,[1] there were a number of questions that Fisher could not answer because of lack of recall.[2] Fisher left the witness stand but was promptly recalled for further redirect testimony, in order to lay a foundation for the offering of his written statement as "past recollection recorded."

Appellant contends that the court committed reversible error in admitting Fisher's July 14, 1980 statement to the police. He argues that, in order to introduce the statement as past recollection recorded, it would have been necessary to adduce from the witness (1) that he at one time had personal knowledge of the facts, (2) that the writing was, when made, an accurate record of the event, and (3) that, after seeing the writing, he has not sufficient present independent recollection of the facts to testify accurately in regard thereto. He relies on *Askins v. State*, 13 Md.App. 702, 710, 284 A.2d 626 (1971), *cert. denied*, 264 Md. 745 (1972). This reliance is misplaced. In *Askins* Judge Anderson, delivering the opinion of the court, stated in pertinent part:

> Past recollection recorded is where "a witness, who is either devoid of a present recollection or *possessed of an imperfect present recollection*, desires to use a past recollection. This he proposes to do by employing some

---

**1.** The State, in conceding error on the part of the trial judge, stated in its brief that:

> As Fisher showed no impairment of his present recollection, the statement's admission on that basis was erroneous.

Obviously, we are not bound by the State's concession, which is evidently predicated on a different perception of the record.

**2.** The record indicates that, during cross-examination, Fisher was unable to recall clearly various details surrounding the conversation with appellant, including: (1) what Sanders had said while initiating the drug deal in the alleyway, (2) how many customers he [Fisher] had on that evening, (3) the time of the conversation with Sanders, (4) when he decided to contact the police, (5) whether he had heard about the crime from someone other than appellant, (6) what time the police arrested him for burglary, (7) what other crimes he had been charged with when he gave the statement to the police, and (8) whom he had talked with at the police station.

record of his past recollection." *Wigmore on Evidence* (3rd Ed.), Sec. 734.

*Id.* at 709–10, 284 A.2d 626 (emphasis added).

Further on Judge Anderson said for the court:

Stated succinctly, in order to introduce past recollection recorded, the general rule is that it is necessary to adduce from the witness "(a) that he at one time had personal knowledge of the facts, (b) that the writing was, when made, an accurate record of the event, and (c) that after seeing the writing, he has not sufficient present independent recollection of the facts to testify accurately in regard thereto." *Kinsey v. Arizona*, 49 Ariz. 201, 65 P.2d 1141 at 1148 [1937], cited with approval in *Hall v. State*, [223 Md. 158] at 173.

13 Md.App. at 710, 284 A.2d 626.

But the Court of Appeals in *Hall v. State*, 223 Md. 158, 162 A.2d 751 (1960), did not cite that portion of *Kinsey* relied upon by Judge Anderson in *Askins*. The court did, however, quote the following from *Kinsey:*

"Regardless of the weight of the authority on the question, it seems to us that upon every principle of logic and common sense, evidence of this class should be admissible. It is an undisputed and undisputable fact the human memory weakens with the passage of time, more with some individuals, less with others, but to some extent with all, and that a written record, unless changed by extrinsic forces, remains the same for all time. It would seem, then, that such a record made contemporaneously with the event by a witness who was honest and capable of observing accurately what happened, would be far better proof of the true facts than the present recollection of that same witness six months later, whether unrefreshed or refreshed by some extrinsic aid, but still in the last resort presumably independent in its nature. There are but two objections to the use of such evidence which have been seriously urged. The first is that it is hearsay in its nature, and the second, that the witness who vouches for the record cannot be properly cross-exam-

ined. We think both of these objections are without foundation. The recorded memory of the witness is just as much the statement of that witness as to what he personally saw or heard as is his present independent recollection of the same fact. * * * But when the person who witnessed the event testifies to the accuracy of the memorandum as made, that memorandum is just as much direct and not hearsay evidence as the language of the witness when he testifies to his independent recollection of what he saw. The objection in regard to cross-examination, on its face, might seem to have some weight, but we think a careful analysis of the question will show that it also is unfounded. What is the purpose of cross-examination? Obviously it is to convince the triers of fact, in some manner, that the testimony of the witness is untrue, for if the cross-examiner accepts it as true, there will be no need nor desire for cross-examination. How, then, may the truthfulness of the evidence of a witness be attacked through cross-examination? It seems to us that all attacks thereon must be reduced to one of three classes: (a) Upon the honesty and integrity of the witness; (b) upon his ability to observe accurately at the time the incident occurred; and (c) upon his accuracy of recollection of the past events. When a witness testifies as to his present recollection, independent or revived, he may, of course, be cross-examined fully on all three of these points. When he testifies as to his past recollection recorded, he can be examined to the same extent and in the same manner as to the first and second of these matters. He cannot well be cross-examined on the third point, but this is unnecessary, for he has already stated that he has *no* independent recollection of the event, which is all that could be brought out by the most rigid cross-examination on this point when the witness testifies from his present recollection, independent or revived."
223 Md. at 173–74, 162 A.2d 751. (emphasis in original).

Although ostensibly approving the notion that the witness should have *no* independent recollection of the event,

the opinion in *Hall* extols the virtues of "a faithful memorandum" and further cites in glowing terms Professor Wigmore's view of the subject:

> There is little which we could add to Professor Wigmore's discussion of the subject, which will be found in 3 Wigmore, *Evidence* (3rd Ed.) §§ 725–757. As he says in § 725, p. 58: "The general canon applicable to Recollection is simple: The Recollection should (so far as may be expected) *correspond to and represent the impressions originally gained by observation."* Where, as here, the past recollection recorded is vouched for as to accuracy by the person who made the record and it has been made at the time of the statement, Wigmore strongly favors its admissibility. He is firmly opposed to the qualification added by some courts to the effect that it is admissible only if the witness has no present recollection. See § 738, where he says: "A faithful memorandum is acceptable, not conditionally on a total or partial absence of a present remnant of actual recollection in the particular witness, but unconditionally; because for every moment of time which elapses between the act of recording and the occasion of testifying, the actual recollection must be inferior in vividness to the recollection perpetuated in the record." It is Wigmore's view (§ 754) that after the witness has testified from the record, the record itself is admissible in evidence.

*Id.* at 173, 162 A.2d 751 (emphasis in original).

We believe that the logic of the Wigmore view is unassailable, yet we recognize that the Court of Appeals, some 22 years later in *Mouzone v. State,* 294 Md. 692, 452 A.2d 661 (1982), relying on *Hall v. State, supra,* opined that:

> At a minimum, in order to qualify as past recollection recorded, the party who seeks to move the statement into evidence must show *some* impairment of present recollection.

294 Md. at 701, 452 A.2d 661 (emphasis added). We note that the *Mouzone* court did not suggest the extent of "impairment of present recollection," but properly left this

to the discretion of the trial judge. *See also McCormick on Evidence* § 302 (3rd ed.1984).

At trial the prosecutor relied upon *Edwards & Person v. State,* 31 Md.App. 562, 358 A.2d 590 (1976). In that case we interpreted *Hall,* apparently holding that a present recollection need not first appear to be lacking before a writing may be used as "past recollection recorded." We also said there, in approving the Chadbourn revision of 3 *Wigmore on Evidence:*

> [T]he *Hall* case puts Maryland in the minority position (preferred, however, by Wigmore), *viz.,* that where a proper foundation is laid a past recollection recorded is admissible without regard to the state of declarant's recollection at the time of trial. Wigmore says of the Maryland rule that it is
>
>> "more in harmony with general experience, as well as with the attitude of the judges who early vindicated the use of past recollection. A faithful memorandum should be acceptable not conditionally on the total or partial absence of a present remnant of actual recollection in the particular witness, but *unconditionally;* because, for every moment of time which elapses between the act of recording and the occasion of testifying, the actual recollection must be inferior in vividness to the recollection perpetuated in the record." (Emphasis in original.) Wigmore, *supra* at 91.

*Edwards and Person v. State,* 31 Md.App. at 568, 358 A.2d 590.

Although our discussion in *Edwards and Person* was merely dicta, it seems that, unknowingly, we were on a collision course with the Court of Appeals based on our construction of *Hall,* which is slightly different than that of the Court of Appeals in *Mouzone.*

In any event, we conclude that *Mouzone* requires at least some impairment and there was indeed "some impairment of present recollection" on the part of the witness, Cedric Fisher.

During the course of direct examination, the prosecuting attorney asked Fisher whether he had given the police a statement and whether it contained the truth as he knew it as of the date he gave it, to which Fisher responded in the affirmative. He was then immediately asked: "And was your memory better a few days after the incident than it is today?" Again, Fisher responded in the affirmative. Thus, it is clear that his recollection of the pertinent events was not as clear on the day of examination as it was on that day, almost four and one-half years earlier, when he was questioned by the police. As we indicated earlier, there are other examples in the record which illustrate "some impairment of recollection." *See* Note 2, *supra.*

When we consider the stark reality that the case was tried nearly four and one-half years after the subject statement was made, we are not at all surprised that the witness's memory was better at the time he made the statements than at the time of his testimony, and that he might not recall certain details. We are reminded by the Court of Appeals in *Mouzone* that there need not be a total collapse of memory, but only "some impairment." We believe that the *Mouzone* test has been met, and that the subject statement was properly admitted. The trial court did not err and, thus, the State's harmless error argument is moot.

## II.

 Appellant, while conceding proof of the *corpus delicti,* "nonetheless submits that under the facts of this case his 'alleged confession' is insufficient to establish his criminal agency." He likens the testimony of Fisher and Campbell to that of an accomplice, yet fails to provide us with any factual basis in the record for that assertion. Aside from the fact that the "accomplice" argument is probably not properly before us, as it was not presented to the trial judge for his consideration, *see Lyles v. State,* 63 Md.App. 376, 492 A.2d 959 (1985), *cert. granted,* 304 Md. 362, 499 A.2d 191, and *von Lusch v. State,* 279 Md. 255, 368

A.2d 468 (1977), this contention is devoid of merit. There was absolutely nothing in the record to indicate that either of the State's witnesses could have been convicted of any of the charges, either as a principal or an accessory. It follows that neither was an accomplice, and thus, there was no requirement that their testimony be corroborated. *See Rivenbark v. State,* 58 Md.App. 626, 473 A.2d 1329 (1984); *Brown v. State,* 281 Md. 241, 378 A.2d 1104 (1977). We hold that upon viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime and the criminal agency of the appellant beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980).

### III.

The trial court's alleged errors in improperly permitting certain prosecutorial comments are threefold:

The first of these involves a hypothetical case wherein the victim of a robbery correctly identifies her assailant but a jury finds him not guilty, apparently because of a lack of corroborating evidence. Then there was a second hypothetical case, or "tale," as appellant described it in his brief, wherein an informant ("snitch") makes a deal with the State and again a jury finds the defendant not guilty, apparently because the informant was unconvincing.

Lastly, the appellant contends that the prosecutor improperly asserted his personal conviction as to the guilt of the accused.

As to the first two contentions, we believe that the prosecutor, in an effort to rebut what defense counsel indicated was a lack of evidence, attempted to illustrate through argument that it would be incorrect for the factfinder to ignore the evidence presented.

■■■ A large measure of discretion in assessing the propriety or lack thereof of prosecutorial remarks is vested in the trial judge:

> In considering whether, in the first instance, any of the remarks attributed to the prosecutor had the effect of unfairly creating prejudice against the defendant, recognition must be given to the fact that the trial judge, who presides in the arena where the forensic adversaries are engaged, is in the best position to evaluate and assess—in the context in which the remarks are made and their relationship to other factors in the trial—whether they were in fact prejudicial.
>
> In the environment of the trial the trial court is peculiarly in a superior position to judge the effect of any of the alleged improper remarks.

*Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707 (1974) (citations omitted).

The *Wilhelm* court also reminds us that

> While arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments of opposing counsel, generally speaking, liberal freedom of speech should be allowed. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined—no well-defined bounds beyond which the eloquence of an advocate shall not soar. He may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. He may indulge in oratorical conceit or flourish and in illustration and metaphorical allusions. *See* 53 Am.Jur. *Trial* § 463 (1956).

*Id.* at 413, 326 A.2d 707.

The trial judge realized, as do we, that the jury's decision for the most part hinged on the credibility of the two State's witnesses. He thoroughly and correctly instructed the jury as to its role in assessing credibility. Evidently, the trial judge did not perceive the prosecutor's "illustra-

tions" or "tales" as unfairly creating prejudice against the appellant. Our review of the entire record convinces us that he did not abuse his discretion.

 As to appellant's last contention that the prosecutor improperly asserted his personal conviction as to the guilt of the accused, it is not clear to us that the statement relied upon is necessarily an expression of "personal conviction." The prosecutor had said:

> Yes, it is true. It certainly is true and forever will be true that there were no fingerprints of this defendant in the place. *It is true that there are no eye witnesses, and it is a hundred percent true, a hundred percent true that you are looking at a murder, and do you think they care what reason you go up there and you get lost, or you make a mistake, or you misinterpret and you come back not guilty. . . .*

We see it as nothing more than further argument by the prosecuting attorney that there is evidence of the appellant's guilt. Again, we see no abuse of discretion on the part of the trial judge in permitting the argument.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.