613 A.2d 466

**Rhodalia Debbie LEVINE**

v.

**STATE of Maryland.**

No. 1850, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Oct. 2, 1992.

554

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen., Baltimore, (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before WILNER, C.J., and MOTZ and HARRELL, JJ.

WILNER, Chief Judge.

Appellant was convicted in the Circuit Court for Anne Arundel County of possession of marijuana with intent to distribute (Count One), possession of marijuana (Count Two), and conspiracy to violate the controlled dangerous substance laws of Maryland (Count Three). Counts Two and Three were merged into Count One, and appellant was sentenced to incarceration for a year and a day. Her

convictions were based on the discovery of marijuana in a suitcase she had transported from Houston to Baltimore–Washington International Airport (BWI). In this appeal, appellant alleges the following errors:

"I.  The [trial] court erred in denying appellant's motion to suppress.

II.  The trial court erred in merging the conspiracy count into the possession with intent to distribute count rather than granting a judgment of acquittal on the conspiracy charge.

III.  The trial court erred in allowing the state to introduce evidence for which a proper chain of custody had not been established."

Finding no error, we shall affirm.

## I

## Motion to Suppress

In a pre-trial "Omnibus Motion," appellant asked, among many other things, that all evidence seized from her "at or about the time of the arrest" be suppressed "because such evidence was seized unlawfully, absent probable cause, and in violation of [her] Constitutional and other legal rights...." Essentially, what she sought to suppress was the suitcase, the marijuana found inside of it, and a statement made to police.

The principal witness at the suppression hearing was State Trooper Leon Martin, who was assigned to the Drug Interdiction Unit of the State Police. On January 13, 1991, the Federal Drug Enforcement Agency (DEA) informed Martin that it had received information from the Houston police indicating that appellant and a male companion would each be bringing a piece of luggage containing a controlled dangerous substance by airplane from Houston to Baltimore. Specifically, Martin was informed that the Houston police became suspicious when the pair purchased their tickets for cash just before the flight left, that police had their luggage scanned by a "drug detection dog," and that

the dog "did alert as a positive reaction that there was a suspected CDS in both bags." Apparently as a result of detaining the luggage for the dog sniff, it did not get on the flight taken by appellant but was put on the next flight, in the crew's cabin, and arrived about an hour and a half after appellant's plane. The Houston police gave the DEA a description of appellant and her companion as well as the baggage claim numbers.

With this information, Trooper Martin, accompanied by one or two DEA agents, went to BWI to await the flight. They observed appellant and her companion at the baggage area. When the pair realized that the luggage had not arrived, they filled out a claim form and then left the terminal. Martin and the DEA agent(s) followed appellant outside, stopped her, identified themselves, explained their purpose, and asked her name. Appellant responded that her name was "Singleton" and, at their request, presented them with an airline ticket bearing that name. She also handed over her baggage claim ticket, which bore the same numbers reported to the DEA by the Houston police. When asked for more identification, appellant produced a Maryland driver's license bearing her true name, Rhodalia Levine.[1] Trooper Martin kept the airline ticket and the baggage claim ticket, but returned the driver's license to appellant. He then informed her of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and "asked her if she would escort us inside" to an office for further questioning.

Once inside the office, appellant was presented with an advice of rights form, which she signed. She then signed a written statement, in which she admitted, in essence, to flying to Houston for the purpose of picking up a suitcase of marijuana to bring back to Baltimore. Thereafter, appellant consented to a search of her suitcase upon its arrival at

---

1. Appellant contended at trial that she did not present a driver's license but a social services identification card.

BWI. To that end, she signed a form entitled "Consent to Search & Seizure." [2]

■ "[A] search conducted without the benefit of a warrant supported by probable cause is per se unreasonable under the [F]ourth Amendment, subject to only a few exceptions." *Gamble v. State,* 318 Md. 120, 123, 567 A.2d 95 (1989) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973)). Searches conducted pursuant to an individual's consent are such an exception; however, the consent must be voluntary and uncoerced. *See id. See also McMillian v. State,* 325 Md. 272, 284–85, 600 A.2d 430 (1992); *Cherry v. State,* 86 Md.App. 234, 240, 586 A.2d 70 (1991).

■ The trial court, in its review of the events of January 13, 1991, found that appellant's statement and consent to search were voluntary. Appellant contends, however, that the voluntariness of her statement and her consent to search her suitcase was tainted by her illegal arrest.[3] We do not agree.

■ "[V]oluntariness is a question of fact to be determined from the totality of the circumstances." *Cherry,* 86 Md.App. at 240–41, 586 A.2d 70 (citing *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047 and *Gamble,* 318 Md. at 125, 567 A.2d 95). As an appellate court, we defer to the findings of fact of the trial court unless clearly erroneous. Yet, we make our own independent evaluation of whether the conduct of law enforcement officers was reasonable in light of the Fourth Amendment. *See, e.g., McMillian,* 325 Md. at 281–82, 600 A.2d 430; *Cherry,* 86 Md.App. at 240, 586 A.2d 70.

---

**2.** At trial, evidence was presented that, when the suitcase was searched, a package of marijuana weighing more than 18 pounds was discovered.

**3.** Appellant also vaguely suggests that, even if her arrest were valid, her statement and consent to search were unlawfully coerced. She makes little effort to develop this argument in her brief, and we find no real support for it in the record.

■ The trial court did not make any specific findings as to whether or when appellant was arrested. It simply found that there was "reasonable cause" and "probable cause" to detain appellant. Our own constitutional appraisal leads us to the conclusion that appellant was arrested when Trooper Martin first informed her of her rights and asked her to return to the terminal.

Trooper Martin testified that appellant was free to go *before* he informed her of her rights, and appellant testified that she did not feel she was free to go *after* she was so informed. Moreover, the trooper did not return appellant's ticket or baggage claim. *See, e.g., Florida v. Royer,* 460 U.S. 491, 501–07, 103 S.Ct. 1319, 1326–29, 75 L.Ed.2d 229 (1983) (plurality opinion) (a *Terry* stop of the defendant escalated into an arrest where, after stopping the defendant in an airport and questioning him, the police retained his identification, his luggage, and a ticket for an airline flight he was about to board). *Compare United States v. Mendenhall,* 446 U.S. 544, 557–58, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980); *Cherry,* 86 Md.App. at 242, 586 A.2d 70. While these factors cause us to conclude that appellant was in custody, they do not dictate the conclusion that she was unlawfully so.

■ From the moment she arrived at BWI with her companion, appellant was under suspicion for, at the least, attempting and conspiring to bring a controlled dangerous substance into Maryland. *See generally* Md.Ann.Code art. 27, §§ 286, 286A, 287, and 290. The Houston police had provided local DEA authorities with a description of appellant, along with a report that a drug-sniffing dog had detected drugs in the suitcase she was carrying. That information was forwarded by the DEA to the Maryland State police. The Houston Police Department is, of course, a major metropolitan law enforcement agency, and local authorities are entitled to rely upon information supplied by it. Clearly then, when Trooper Martin and the DEA agent(s) stopped appellant outside the airport and asked her for identification, they had a reasonable articulable suspi-

cion for doing so. *See generally Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Upon stopping appellant, Trooper Martin confirmed not only the name on the ticket as given by the Houston police, but also the baggage claim number. Appellant identified herself as "Singleton," the name on her ticket, but, upon seeing appellant's driver's license, the trooper realized that the name was an alias. We are satisfied that, at that point, the trooper had probable cause to place appellant under arrest for the suspected attempt and conspiracy to commit a crime.

For all the above reasons, we agree with the trial court's finding that appellant was lawfully detained, although we go one step further and conclude that there was a lawful arrest. Hence, we find that appellant's consent was not tainted by the circumstances that preceded it.

## II

### Merger

■ At the close of the State's case and, again, at the close of all evidence, defense counsel moved for judgment of acquittal as to conspiracy. Defense counsel argued that there was no evidence to support a charge of conspiracy, and the prosecutor stated, "I will concede on that count." The court responded that it would "enter the finding of guilty as to Count One [possession of marijuana with intent to distribute], merge the other two into Count One. Okay?" At that time, counsel lodged no objection.

Appellant now argues that, rather than merge the two charges, the trial judge should have granted defense counsel's motion for judgment of acquittal on the conspiracy charge. Appellant complains that her "criminal record reflects a conviction for ... conspiracy to possess with intent to distribute marijuana when there was concededly no evidence produced to prove the conspiracy charge ... [and, therefore, the] conviction must be reversed."

■ Whether evidence is sufficient to support a conviction is a question of law, not of fact, and questions of law

are for the trial judge to decide. *See generally Brooks v. State,* 299 Md. 146, 150–51, 472 A.2d 981 (1984). *Cf. Crown Oil v. Glen,* 320 Md. 546, 567, 578 A.2d 1184 (1990) (a court "is not bound by stipulations on matters of law"). In short, the trial court in this case was not bound by the prosecutor's concession. The court apparently found that the evidence was sufficient to support a conspiracy conviction, and appellant presents no argument in this appeal to the effect that that finding was erroneous. In point of fact, appellant received more than she was entitled to receive, for we see no basis in this record for merging the conspiracy conviction into the possession conviction. *See Murray v. State,* 89 Md.App. 626, 634–35, 599 A.2d 465 (1991).

### III

### Chain of Custody

■ Finally, appellant complains that the trial court erred by admitting into evidence her "suitcase and its contents, the sample [of] marijuana allegedly removed from the suitcase[,] and the lab analysis of the same" on the ground that the State failed "to prove the proper chain of custody of the evidence."

Md.Cts. & Jud.Proc.Code Ann. §§ 10–1001 through 10–1003 set forth the steps that must be taken by the State in order to satisfy chain of custody requirements when the evidence in question is a controlled dangerous substance. Section 10–1001 provides that, under certain circumstances, the chemist or analyst who examined the substance need not testify. Section 10–1002 identifies additional persons who are considered to be within the chain of custody and describes circumstances when those persons need not testify. Section 10–1003 permits a defendant to demand the presence at trial of any person in the chain of custody, despite the provisions in §§ 10–1001 and 10–1002.

Prior to trial, pursuant to § 10–1003, appellant filed a written demand for the presence, as a prosecution witness, of the chemist, analyst, and any person in the chain of

custody. Pursuant to § 10–1002(a)(1), the State was there-
fore required to provide the testimony of

"(i) The seizing officer;

(ii) The packaging officer, if the packaging officer is not
also the seizing officer; and

(iii) The chemist or other person who actually touched the
substance and not merely the outer sealed package in
which the substance was placed by the law enforcement
agency before or during the analysis of the sub-
stance...."

Appellant does not contend that the State failed to estab-
lish the chain of custody of the suitcase and the marijuana
contained therein after those items arrived at BWI and
were seized by Trooper Martin. Instead, she argues that
no testimony was presented regarding the chain of custody
of the evidence from the time the suitcase was detained in
Houston until its arrival at BWI. In appellant's view, "[a]
possibility of tampering existed in this case." Moreover,
she posits, "without any evidence from the Houston police
department, the record fails to prove a reasonable probabili-
ty that the evidence allegedly seized in Houston was the
same evidence forwarded and seized in Maryland."

There is little question that the Houston police
"seized" the suitcase and the marijuana contained in it
when they delayed its transport to BWI so that a canine
scan could be conducted. *See generally United States v.
Place*, 462 U.S. 696, 707–08, 103 S.Ct. 2637, 2045, 77 L.Ed.2d
110 (1983) and *In Re Montrail M.*, 87 Md.App. 420, 436, 589
A.2d 1318 (1991), *aff'd on other grounds*, 325 Md. 527, 601
A.2d 1102 (1992). Under the circumstances of this case,
however, we do not agree that the seizure by the Houston
police was the type of seizure contemplated by the Mary-
land legislature in enacting § 10–1002(a)(1)(i). We are satis-
fied, for the purposes of the statute, that Trooper Martin
was the "seizing officer."

The Maryland authorities involved in this case did not act
in concert with the Houston police. They were unaware of

the events surrounding appellant's suitcase until they received a telephone call from the "DEA office here in Baltimore," which had been contacted by the Houston police, and thus had no way of knowing who had contact with the suitcase, either in Houston or on the flight to BWI.

At best, the task of tracing the chain of custody of the evidence before its arrival in Maryland would prove unnecessarily burdensome for the State. At worst, and more likely, it could prove impossible. The job of identifying and interviewing a host of people in other States, or countries, is difficult enough in a case like this involving a direct flight. Where luggage suspected of containing contraband is flown to Maryland via a route that requires connecting flights, the State would be compelled to account for the actions of countless police officers, airport security officers, baggage handlers, and other airline employees across the country who may have come into contact with it. Merely identifying such people would likely prove impossible. The task would be at least as daunting if the package were shipped by mail.

In the absence of any indication whatsoever of tampering, it would be nonsensical to impose such a burden on the State. *Cf. Best v. State,* 79 Md.App. 241, 248–58, 556 A.2d 701, *cert. denied,* 317 Md. 70, 562 A.2d 718 (1989) (indicating that the legislature's purpose in enacting §§ 10–1001— 10–1003 was to facilitate the admission of real evidence and the establishment of chain of custody, rather than to create new grounds for exclusion). *See, e.g., People v. Newman,* 129 A.D.2d 742, 514 N.Y.S.2d 501, 502 (1987) (where an officer who seized a controlled dangerous substance sealed it then mailed it to a police laboratory, where it was determined that the seal was intact, "it was unnecessary for the People to produce the postal employees who handled the package").

Evidence presented at the trial below established that, when the suitcase arrived at BWI, Trooper Martin retrieved it and took it to the room where appellant was waiting. There, appellant "identified [it] as being hers." The consent to search form signed by appellant, which was admit-

ted into evidence, stated that the suitcase was "sealed with zippers and [a] small padlock." In her statement to police, moreover, appellant admitted that she went to Houston for the purpose of retrieving a suitcase of marijuana and bringing it back to Maryland. There was no indication that appellant alleged at any time prior to trial that tampering had occurred.

We reiterate that §§ 10–1001—10–1003 of the Courts article set forth chain of custody requirements only for controlled dangerous substances. As a general rule,

"[i]f the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in substantially unchanged condition. On the other hand, if the offered evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the trial court's discretion may require a substantially more elaborate foundation. A foundation of the latter sort will commonly entail testimonially tracing the 'chain of custody' of the item...."

2 John W. Strong, *McCormick on Evidence* § 212, at 8 (4th ed. 1992) (footnote omitted). *See also* 6 Lynn McLain, *Maryland Evidence* § 901.2, at 491–92 (1987). *See generally Best,* 79 Md.App. at 250, 556 A.2d 701 (under common law principles, "what is necessary to negate the likelihood of tampering or change of condition will vary from case to case and from one type of evidence to the next"); *Amos v. State,* 42 Md.App. 365, 370, 400 A.2d 468 (1979) ("[a]lthough there is a natural inference or presumption of continuance in the same condition, that inference varies in each case with the nature of the subject matter and the time element").

Unlike the marijuana packed inside it, the suitcase was unique and readily identifiable through less elaborate mea-

sures. The trial court apparently accepted the State's evidence that the suitcase itself remained substantially unchanged from the time appellant parted with it at the airport in Houston until she was reunited with it at BWI. From this, the court apparently surmised that the contents of the suitcase remained unchanged as well. On the record before us, we perceive no abuse of discretion.

This is not to say that there are no circumstances under which the State might be required to establish the chain of custody of evidence originally seized in another jurisdiction, then transported to Maryland and seized by State authorities. If there is any significant evidence of tampering following an initial seizure but prior to the item's arrival in Maryland, the State may be called upon to rebut that evidence and show that no tampering occurred. Because there is no reason to suspect that tampering occurred in the instant case, however, we need not reach that question at this time.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.