570

81 A.3d 650

Melissa COLEY

v.

STATE of Maryland.

No. 2675, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Dec. 20, 2013.

**572**

Julia C. Schiller (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Brenda Gruss (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WOODWARD, HOTTEN, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

LAWRENCE F. RODOWSKY (Retired, Specially Assigned), J.

■ Melissa Coley pled guilty in the Circuit Court for Caroline County to possession of a controlled dangerous substance and possession of drug paraphernalia.[1] She was sentenced to serve one year and one day in prison. On appeal, she challenges the court's denial of her motion to suppress evidence police discovered during a warrantless search of her vehicle. The State concedes error. We disagree with the State's conclusion, however,[2] and, for the following reasons, we shall affirm Coley's convictions.

---

**1.** At the January 9, 2013 plea hearing, the State entered a *nolle prosequi* as to an additional charge of prostitution.

**2.** An appellate court is not bound by a party's erroneous concession of error. *See, e.g., Tamara A. v. Montgomery County Dep't*

## Facts and Proceedings

On appeal of a court's decision not to suppress evidence, our review is confined to the record of the suppression hearing. *See, e.g., Longshore v. State,* 399 Md. 486, 498, 924 A.2d 1129, 1135 (2007). The record of that December 19, 2012 hearing reveals the following facts.

Deputy William Bodnar of the Caroline County Sheriff's Office testified that, on July 8, 2012, at about 7:00 p.m., he was dispatched to Walker's Grocery Store, located at 18230 Henderson Road in Marydel. He was assisted by Trooper Norton of the Maryland State Police.[3]

Over a several-day period occurring four or five days prior to July 8, Deputy Bodnar had been called to the store two or three times per day. Employees of the store had reported a white female who would arrive at the store in a black Ford vehicle and loiter in front of the store for short periods of

*of Health & Human Servs.,* 407 Md. 180, 187–88 n. 5, 963 A.2d 773, 777 n. 5 (2009) ("a court is not bound by a party's concession of a point of law"); *Greenstreet v. State,* 392 Md. 652, 667, 898 A.2d 961, 970 (2006) ("a party may not concede a point of law to the exclusion of appellate review, as necessary and proper to decide the case.... The question of staleness is a question of law requiring the application of facts. Hence, we are not bound by the concession made by the prosecutor at the suppression hearing."); *Spencer v. Maryland State Bd. of Pharmacy,* 380 Md. 515, 523, 846 A.2d 341, 345–46 (2004) ("This Court, of course, is not bound by the concessions made by the parties on issues of law, which we may independently review."); *In re Heather B.,* 369 Md. 257, 266 n. 9, 799 A.2d 397, 402 n. 9 (2002) ("We independently decide issues of law and are not bound by a party's concession of law in a particular case."); *Imbesi v. Carpenter Realty Corp.,* 357 Md. 375, 380 n. 3, 744 A.2d 549, 551 n. 3 (2000) ("A court, however, is not bound by an erroneous concession of law."); *Levine v. State,* 93 Md.App. 553, 561–62, 613 A.2d 466, 470 (1992) ("Whether evidence is sufficient to support a conviction is a question of law, not of fact, and questions of law are for the trial judge to decide.... In short, the trial court in this case was not bound by the prosecutor's concession."); *Sanders v. State,* 66 Md.App. 590, 595 n. 1, 505 A.2d 557, 559 n. 1, *cert. denied,* 306 Md. 370, 509 A.2d 134 (1986) ("The State [conceded] error on the part of the trial judge.... Obviously, we are not bound by the State's concession, which is evidently predicated on a different perception of the record.").

3. Trooper Norton did not testify at the suppression hearing.

time. While she was there, Hispanic males would enter the store, purchase condoms, and leave with the white female in her vehicle. Store employees believed that the female was engaging in prostitution. Deputy Bodnar had made contact and conversed with the female, whom he identified as Coley, multiple times over that several-day period. In one of those conversations, Coley "advised that she was a prior heroin user and she had been clean for approximately one year, close to a year." On July 7, Deputy Bodnar had served Coley with a cease and desist letter prohibiting her from loitering in front of Walker's Grocery Store. According to Deputy Bodnar, she also was served with cease and desist letters pertaining to State Line Gas and "basically all the businesses in Marydel."

When Deputy Bodnar arrived at Walker's Grocery Store on July 8, a store employee said that Coley had left within the previous fifteen minutes. The employee believed that Coley had gone to Walker's Trailer Park, the entrance to which was located 100 feet from the exit to the grocery store parking lot. Deputy Bodnar and Trooper Norton went to the trailer park and located Coley, alone, sitting in the driver's seat of a black Ford Focus, which was parked in front of Lot 30. The vehicle was not running. The driver's side door of the vehicle was open and Coley's feet were on the ground.

Deputy Bodnar observed an open beer can "in the cuphold-er of the center console of the vehicle." "On the center console, in front of the gearshifter knob," he "observed torn, plastic Ziploc baggies," one-inch in length, which he "believed to be drug paraphernalia, through [his] knowledge, training and experience." In Deputy Bodnar's view, the baggies ap-peared to have been "torn open." "They were, the pieces that you would press together were, mainly was laying in the console and they had been torn open. They weren't, so to speak, opened up[,] and the contents of the package would have been dumped out. They were actually torn open." Deputy Bodnar testified that such torn plastic baggies are "used to package suspected heroin. The heroin's wrapped in wax paper and then the wax paper's folded into approximately

like a, I'll say a half inch square and it's placed inside the one inch big Ziploc baggy."

Upon finding the plastic baggies, Deputy Bodnar detained Coley and placed her in handcuffs in front of her vehicle. He then searched Coley's purse and the interior of the vehicle. In Coley's purse, Deputy Bodnar found wax paper, a lighter, and Q-tips. In a "hidden compartment" in the vehicle, Deputy Bodnar found four syringes and Ziploc baggies containing suspected heroin wrapped in blue wax paper. The State introduced photographs of the interior of Coley's vehicle and of the items seized from Coley's vehicle.

After hearing argument, the suppression court summarized Deputy Bodnar's testimony and made oral findings of fact. The court did not believe the open beer can was "evidence of anything wrong." The court found otherwise with regard to the torn plastic baggies.

"[Deputy Bodnar] did at the same time observe two small plastic baggies and as he said they were about one inch by two inch, which is not the, obviously not a sandwich bag, but has a limited use. Further he noticed that these were not just plastic baggies, but that they had the, they were torn at one end, which to the officer in his training indicates a, something which has been used to contain controlled dangerous substance and in particular heroin. At that time, um, due to the observation of the drug paraphernalia, the officer believed he had probable cause to search the vehicle for related paraphernalia. Now paraphernalia can be in different forms, but when the plastic baggies are such that the corners have been torn off, it would be an indication that they were, had been specifically used to previously contain a controlled dangerous substance and therefore residue could be in place and that would be a charge of possession of a controlled dangerous substance, not just a fineable offense, but an incarcerable offense. He detained the, asked the Defendant to get out. He detained her and then he searched the vehicle and found other controlled dangerous substances and other paraphernalia. I find that there was a reasonable, um, for the officer to believe that there was a

crime being committed in the possession of a controlled dangerous substance and the search of the vehicle without a warrant was not unreasonable. I'll therefore deny the Motion to Suppress. . . . Quite simply on the issues of the prostitution, I don't agree with you, Mr. [Prosecutor]. . . . When I say that, as to the right to search the vehicle, I don't think the vehicle was being searched for, there was not probable cause at that time for elements of prostitution to search the vehicle. The evidence that he found may be, may be admissible to show prostitution later on in her trial, so it was reasonably seized, but I don't think that was his reason for searching the vehicle."

After waiving a jury trial, Coley, on January 9, 2013, pled guilty on an agreed statement of facts, and was sentenced on February 25, 2013. She noted this timely appeal.

### Discussion

Our standard of review is well settled. "[W]e view the suppression court's findings of fact, and reasonable inferences drawn therefrom, in the light most favorable to the prevailing party on the motion below, in this case, the State. We do not disturb those findings unless clearly erroneous." *McCracken v. State*, 429 Md. 507, 515, 56 A.3d 242, 246 (2012) (citing *Crosby v. State*, 408 Md. 490, 504–05, 970 A.2d 894, 902 (2009)). "An appellate court, . . . under an independent *de novo* review standard, must consider the application of the law to those facts in determining whether the evidence at issue was obtained in violation of the law, and, accordingly, should be suppressed." *Longshore*, 399 Md. at 499, 924 A.2d at 1136.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects." "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' " *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88

S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968)). Warrantless searches are presumptively unreasonable, "subject only to a few specifically established and well-delineated exceptions." *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

In *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court recognized an exception allowing warrantless searches of automobiles upon probable cause to believe that contraband is being concealed and illegally transported in the automobile. *See also Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 1300, 143 L.Ed.2d 408 (1999). "Given the nature of an automobile in transit, the Court recognized that an immediate intrusion is necessary if police officers are to secure the illicit substance." *United States v. Ross,* 456 U.S. 798, 806–07, 102 S.Ct. 2157, 2163, 72 L.Ed.2d 572 (1982). *See also Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (per curiam) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); *California v. Carney,* 471 U.S. 386, 390–91, 105 S.Ct. 2066, 2068–69, 85 L.Ed.2d 406 (1985).

 Probable cause is merely a practical, common sense determination, given the totality of the circumstances, that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). As the Supreme Court reiterated in *Maryland v. Pringle,*

> "the probable-cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' '[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' "

540 U.S. 366, 370–71, 124 S.Ct. 795, 799–800, 157 L.Ed.2d 769 (2003) (quoting *Gates,* 462 U.S. at 231–32, 103 S.Ct. at 2328–

29). "The principal components of a determination of ... probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount ... to probable cause." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996).

Coley contends that Deputy Bodnar lacked constitutionally sufficient grounds to search her vehicle, for three reasons. First, his unconfirmed suspicion of prostitution did not authorize a warrantless arrest or search. Second, the presence of an open beer can in the center console of Coley's car, which was not running and which was parked on private property, did not provide probable cause to search the vehicle. Finally, the presence of plastic baggies did not provide probable cause to search the vehicle because the baggies were not themselves contraband and, even if they were, "the discovery of some contraband [does not suggest] the likely presence of more contraband, yet to be discovered." Appellant's Brief at 9 (citing *Bell v. State,* 96 Md.App. 46, 55, 623 A.2d 690, 694 (1993), *aff'd,* 334 Md. 178, 638 A.2d 107 (1994)). Furthermore, Coley argues, possession of paraphernalia is not an arrestable offense that could authorize a search incident to a lawful arrest.

As we have noted, the State concedes error. The State agrees with Coley that neither Deputy Bodnar's suspicion of prostitution nor his observation of the open beer can provided probable cause for an arrest or search. The State also submits, based on out-of-state decisions,

> "that on the facts of this case, Deputy Bodnar's observation of the torn Ziploc baggies did not furnish probable cause to search the car.... [T]he mere observation of knotted or torn plastic bags by an officer who, in light of his training and experience, believes them to be drug paraphernalia, does not furnish probable cause to search for illegal drugs or other paraphernalia."

State's Brief at 5. The State believes that it is precluded from relying on Deputy Bodnar's knowledge of Coley's past heroin use as an additional circumstance that could add up to probable cause because the agreed statement of facts that the State submitted as a proffer of proof in support of Coley's guilty plea "described Coley's admission as having occurred after she was arrested and after she waived her *Miranda* rights." State's Brief at 8. The State tells us that "[t]he chronology in the Agreed Statement of Facts conforms to the chronology in the police report." State's Brief at 8, n. 3.[4]

■ The agreed statement of facts submitted in support of Coley's guilty plea has no bearing on our review of the suppression decision made three weeks earlier by a different judge than the one who accepted the plea. Furthermore, the agreed statement of facts and Deputy Bodnar's testimony at the suppression hearing are not necessarily inconsistent. At the suppression hearing, Deputy Bodnar testified that, during one of the conversations he had with Coley before July 8, 2012, "[s]he advised that she was a prior heroin user and she had been clean for approximately one year, close to a year." Deputy Bodnar did not testify to whether Coley made any statements after being arrested. The agreed statement of facts did not mention any event or conversation occurring prior to July 8, 2012. According to the statement, after the search of the vehicle,

> "Ms. Coley was placed under arrest, read her *Miranda* rights, which she waived.... She did admit to being a former heroin addict, however, she stated she had been clean for about a year."

Deputy Bodnar's testimony and the agreed statement of facts are not mutually exclusive. Just as Deputy Bodnar's testimony at the suppression hearing omitted anything that occurred after his search of the vehicle, the agreed statement of facts omitted anything that occurred prior to the evening of July 8.

---

4. The statement of probable cause that Deputy Bodnar submitted in support of a statement of charges in the District Court does not mention any admission by Coley that she was or had been a heroin user.

Neither source actually contradicts the other. It would be entirely reasonable for us to infer, in the light most favorable to the State, that Coley told Deputy Bodnar of her past drug use prior to July 8, as he testified, and again after she was arrested, as set forth in the agreed statement of facts.[5]

In any event, the fact that the State's proffer of proof may have differed slightly from Deputy Bodnar's testimony does not change the record that was before the suppression court. In *Trusty v. State*, 308 Md. 658, 670–72, 521 A.2d 749, 755–56 (1987), the Court rejected the opposite argument to the one the State makes here. In *Trusty*, the State had attempted on appeal to use evidence adduced at trial to bolster the insufficient evidence adduced at a pretrial suppression hearing. The Court explained that "this proof came too late, of course, to cure the deficiency at the pretrial hearing." *Id.* at 670, 521 A.2d at 755. In the case of a suppression motion that was erroneously denied, the rule that the suppression record cannot be bolstered later by evidence adduced at trial protects the defendant by relieving any responsibility

> " ' "to retry before the jury the question which he has previously presented according to law for a final determination of the judge." Absent notice to the defense that the legality of the search and seizure is somehow an "open" question throughout the trial, the defendant might well not challenge certain trial testimony which bolsters the pretrial suppression ruling but is not particularly damaging on the issue of guilt or innocence.' "

*Id.* at 671, 521 A.2d at 755–56 (quoting 4 W. LaFave, *Search and Seizure*, § 11.7(C) (2d ed.1987)).

---

**5.** We also note that Coley has not raised this possible inconsistency in any way, either in the circuit court or on appeal. On the contrary, in her brief to this Court, she states:

> "Deputy Bodnar had repeated contacts with the female, identified as Appellant, over several days [*i.e.*, prior to July 8]. During that time period, Deputy Bodnar spoke to Appellant and learned that she was a prior heroin user, but she had been clean for one year."

Appellant's Brief at 3.

With regard to the situation now before us, assuming Coley were the one raising the inconsistency as evidence that the suppression ruling was erroneous, not the State, Professor LaFave explains:

"What then of the reverse situation, that is, where again there was no renewal of the motion at trial but it is now the defendant who wishes the appellate court to take into account the testimony at trial because he thinks that testimony undercuts the testimony given in the pretrial hearing? Though it has occasionally been said that an appellate court 'will look to relevant evidence produced on trial for any adverse effect it might have on admission of disputed items,' courts have usually declined to do so in these circumstances. The most cogent explanation for this result is that because of the 'defendant's failure to move at that point for a reconsideration of his motion to suppress,' the trial judge did not err 'in not reconsidering its suppression ruling sua sponte.' As noted earlier, there is some dispute as to whether reconsideration of a pretrial suppression ruling is a matter entirely within the trial judge's discretion. But even *Gouled v. United States* [255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921)], which speaks of the court's 'duty' to reconsider, described that duty as being 'to entertain an objection' when 'in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers.' If there is no such duty when no objection is made, it would seem to follow that there is no reason for the appellate court to consider evidence the trial judge was not required to consider."

6 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 11.7(d), at 581–82 (5th ed.2012) (footnotes omitted).

In this case, as the suppression ruling was not actually re-litigated before Coley's guilty plea was accepted,[6] the Decem-

---

6. Although Coley renewed her motion to suppress at the plea hearing for the purpose of preserving the issue for appeal, she did so in only the broadest of terms:

ber 19, 2012 suppression ruling was binding upon the plea judge [7] and the record of the plea hearing is not relevant to our review of the suppression ruling. As we have explained, "[i]n reviewing the denial of a motion to suppress, we look only to the record of the suppression hearing and do not consider the evidence admitted at trial." *See, e.g., In re Tariq A–R–Y,* 347 Md. 484, 488, 701 A.2d 691, 693 (1997), *cert. denied,* 522 U.S. 1140, 118 S.Ct. 1105, 140 L.Ed.2d 158 (1998). *See also Stokeling v. State,* 189 Md.App. 653, 661, 985 A.2d 175, 180 (2009), *cert. denied,* 414 Md. 332, 995 A.2d 297 (2010) ("In reviewing the denial of a motion to suppress evidence, we look exclusively to the record of the suppression hearing."). Any

---

"THE COURT: And also, just for purposes of the record, Mr. [Defense Attorney], had we had the trial today with live testimony I'm assuming you would have reasserted, just to preserve for the record, all the issues raised on the Motion to Suppress?

"[DEFENSE COUNSEL]: That's correct, Your Honor. Yes.

"THE COURT: And just for purposes of the record, . . . what were those issues?

"[DEFENSE COUNSEL]: The issue was I filed a Motion because . . . in our opinion, the unconsented to search of the vehicle was not supported by probable cause, and [the suppression judge] ruled against us. But under the circumstances, that we wanted Ms. Coley's right to appeal that ruling.

"THE COURT: So, so, it was the . . .

"[DEFENSE COUNSEL]: I, I made a Motion . . .

"THE COURT: The warrantless, right.

"[DEFENSE COUNSEL]: To suppress the heroin and the syringes because of the warrantless, unconsented to search of the vehicle in which Ms. Coley was located.

"THE COURT: Okay. And that was the only issue raised with [the suppression judge]?

"[DEFENSE COUNSEL]: Yes."

This would not have put the judge who received the plea on notice that there was an inconsistency between the agreed statement of facts and Deputy Bodnar's testimony at the suppression hearing, or that the suppression ruling should be revisited. Coley did not request an opportunity to re-litigate the motion.

7. Maryland Rule 4–252(h)(2)(C) provides:

"(C) If the court denies a motion to suppress evidence, *the ruling is binding at the trial unless the court, on the motion of a defendant and in the exercise of its discretion, grants a supplemental hearing or a hearing de novo and rules otherwise.* A pretrial ruling denying the motion to suppress is reviewable on a motion for a new trial or on appeal of a conviction."

(Emphasis added).

record that developed in the circuit court after a binding suppression ruling was made is simply immaterial to our review. The suppression judge was not able to consider a possible inconsistency that would not exist until three weeks after he ruled on the motion and that would not be raised by either party until the State filed its appellate brief. We shall not consider it now.

■ Accordingly, we do consider, as part of the totality of the circumstances, both Deputy Bodnar's observation, in plain view in Coley's vehicle, of torn one-inch plastic baggies that he knew from his training and experience to be likely heroin paraphernalia, and Deputy Bodnar's prior knowledge that, by her own admission, Coley had been a heroin user in the past and had used heroin as recently as one year before. In our independent constitutional appraisal, those two facts constituted probable cause for Deputy Bodnar reasonably to believe that contraband—either heroin or other heroin paraphernalia—was present in Coley's vehicle. The subsequent search of Coley's purse and the interior of Coley's vehicle was, therefore, reasonable, and did not violate the Fourth Amendment.

We recognize that possession of empty plastic bags, by itself, is not necessarily criminal. Items that police officers may recognize from their training and experience as likely drug paraphernalia may also have innocent uses. As the Supreme Court explained in *Gates,* however,

> "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, *innocent behavior frequently will provide the basis for a showing of probable cause;* to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands.... In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts."

462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13 (emphasis added). The Court reiterated the same principle, with regard to the lower standard of reasonable suspicion, in *United States v. Sokolow:*

> "*Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion.* See *Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 1326–27 [75 L.Ed.2d 229] (1983) (opinion of White, J.); *id.,* at 515–16, 103 S.Ct. at 1333–34 (Blackmun, J., dissenting); *id.* at 523–24, 103 S.Ct. at 1337–38 (Rehnquist, J., dissenting). We said in *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752 [65 L.Ed.2d 890] (1980) (per curiam), 'there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.' *Id.* at 441, 100 S.Ct. at 2754. Indeed, *Terry* [*v. Ohio* ] itself involved 'a series of acts, each of them perhaps innocent' if viewed separately, 'but which taken together warranted further investigation.' 392 U.S. [1, 22, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968) ]; see also [*United States v. Cortez,* 449 U.S. 411, 417–19, 101 S.Ct. 690, 694–96, 66 L.Ed.2d 621 (1981) ]."

490 U.S. 1, 9–10, 109 S.Ct. 1581, 1586–87, 104 L.Ed.2d 1 (1989) (footnotes omitted; emphasis added). *See also Ransome v. State,* 373 Md. 99, 105, 816 A.2d 901, 904 (2003) ("A factor that, by itself, may be entirely neutral and innocent, can, when viewed in combination with other circumstances, raise a legitimate suspicion in the mind of an experienced officer.").

■ Even though the plastic baggies did not at that moment contain controlled dangerous substances, the fact that they were empty is not what aroused Deputy Bodnar's suspicion. Deputy Bodnar observed other characteristics of the baggies that suggested to him, based on his training and experience, that they had previously been used to hold controlled dangerous substances. We may give "considerable credit ... to the expertise of law enforcement officers in conducting investigations into illegal drug activity." *See, e.g., Birchead v. State,* 317 Md. 691, 703, 566 A.2d 488, 493–94

(1989); *Winters v. State*, 301 Md. 214, 228, 482 A.2d 886, 893 (1984). Indeed, we "must allow the police officers 'to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." ' " *Ransome*, 373 Md. at 104–05, 816 A.2d at 904 (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750–51, 151 L.Ed.2d 740 (2002)). That is not to say that an officer may " 'simply assert that innocent conduct was suspicious to him or her.' Rather, the officer must explain how the observed conduct, when viewed in the context of all of the other circumstances known to the officer, was indicative of criminal activity." *Crosby v. State*, 408 Md. 490, 508, 970 A.2d 894, 904 (2009) (quoting *Bost v. State*, 406 Md. 341, 357, 958 A.2d 356, 365 (2008)).

Deputy Bodnar observed that the baggies were approximately one inch long. This size has limited utility for household purposes, and bags of this size are often used to package narcotics. Deputy Bodnar testified that such bags are commonly

> "used to package suspected heroin. The heroin's wrapped in wax paper and then the wax paper's folded into approximately like a, I'll say a half inch square and it's placed inside the one inch big Ziploc baggy."

The bags also had been torn open at one end. From Deputy Bodnar's training and experience, he recognized that

> "[t]hey were, the pieces that you would press together were, mainly was laying in the console and they had been torn open. They weren't, so to speak, opened up[,] and the contents of the package would have been dumped out. They were actually torn open."

Deputy Bodnar reasonably believed that the plastic baggies were not intended for innocent use and that they were, in fact, drug paraphernalia.

 Deputy Bodnar's suspicion that the plastic baggies were drug paraphernalia was bolstered by his existing knowledge, from Coley herself, that Coley had been "a prior heroin

user and she had been clean for approximately one year, close to a year." "The Supreme Court case law makes it clear that not only prior convictions but also prior arrests and *even a criminal reputation may be significant factors in the probable cause equation.*" *State v. Amerman*, 84 Md.App. 461, 484, 581 A.2d 19, 30 (1990) (emphasis added) (citing *Brinegar v. United States*, 338 U.S. 160, 162, 69 S.Ct. 1302, 1304, 93 L.Ed. 1879 (1949) (Brinegar had "a reputation for hauling liquor"); *Carroll*, 267 U.S. 132, 45 S.Ct. 280 (police had observed two of the suspects selling bootleg liquor three months earlier)). *See also Malcolm v. State*, 70 Md.App. 426, 432, 521 A.2d 796, 799 (1987) ("On the street, if not at the trial table, an individual carries with him inextricably the burden of his reputation[.]"), *aff'd in part, vacated in part on other grounds*, 314 Md. 221, 550 A.2d 670 (1988).

Coley's claim that she was no longer a heroin user (and whether Deputy Bodnar or the suppression court believed that she was no longer a heroin user) is irrelevant. The important fact is that Deputy Bodnar knew that she at least had been a heroin user. Deputy Bodnar's observation of something that he believed, based on his training and experience, to be heroin paraphernalia, in the vehicle of a person who had admitted to him several days earlier that she had used heroin in the past, combined to form a fair probability that heroin or other paraphernalia would be found in the vehicle. In other words, there was probable cause justifying Deputy Bodnar's subsequent search of the vehicle.

Coley's reliance on *Bell v. State*, 96 Md.App. 46, 55, 623 A.2d 690, 694 (1993), *aff'd*, 334 Md. 178, 638 A.2d 107 (1994), is misplaced. In *Bell*, officers patrolling a high crime area in Baltimore City observed a group of four or five young men, including Bell, who scattered at their approach. The officers observed Bell walk over to a nearby car and make " 'a hand movement as [if he were] placing something in the vehicle.' " *Id.* at 52, 623 A.2d at 692–93. The officers continued their patrol. When they returned ten minutes later, they observed Bell drop " 'a vial, a white object' " into an open window of the car. *Id.* at 52, 623 A.2d at 693. The officers then got out of

their vehicle and arrested Bell. After Bell denied consent to search the car, an officer "observed a vial of white powder lying in open view on the floor of the front passenger seat." *Id.* Pursuant to the *Carroll* doctrine, the officers opened the car door and retrieved the vial. The officers then conducted what they described as an inventory search of the car and found a duffel bag between the front seats containing several baggies, each containing multiple vials of cocaine.

On appeal, we upheld with "no difficulty" the initial police intrusion into the vehicle to retrieve the vial of white powder. *Id.* at 53, 623 A.2d at 693. Nevertheless, as "[t]he only probable cause asserted by the police was probable cause to believe that the single vial observed lying on the floor in front of the passenger seat contained contraband narcotics," we held that the justification for the *Carroll* search ended as soon as the vial was retrieved. *Id.* at 54, 623 A.2d at 694. We further held that the search of the duffel bag was not a *bona fide* inventory search. We left open the possibility that "an argument might someday be made for extending a [*Carroll*] search such as this based upon some almost Newtonian proposition that the discovery of *some* contraband suggests the likely presence of *more* contraband yet to be discovered," but did not consider such argument, as it had not been raised in the circuit court or on appeal. *Id.* at 55, 623 A.2d at 694. Rather, at the suppression hearing, the State had insisted that the initial search and the search of the duffel bag were two distinct searches with separate justifications. The Court of Appeals affirmed our discretionary decision not to consider the unpreserved argument that the search of the duffel bag was part of the initial *Carroll* search. 334 Md. at 186–91, 638 A.2d at 112–14.

Contrary to Coley's assertion in her brief, in *Bell* we did not "criticize" the "proposition that the discovery of some contraband suggests the likely presence of more contraband yet to be discovered." Appellant's Brief at 9. Rather, we simply explained that that proposition was not before us in that case. In *Bell,* the police officers asserted only probable cause to believe that the one vial that they had seen Bell drop into the

car contained cocaine. They did not assert that their discovery of that one vial provided probable cause to believe that they would find others.

By contrast, that argument was raised at the suppression hearing in this case.[8] Deputy Bodnar's observation of plastic baggies in plain view that had been "torn open," suggesting that they previously had been used to contain heroin, plus his knowledge that Coley had been a heroin user, provided probable cause to believe that he would find concealed elsewhere in the vehicle other plastic baggies that still contained heroin.

**JUDGMENTS OF THE CIRCUIT COURT FOR CARO-LINE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

8. At the suppression hearing, the prosecutor argued:

"Your Honor, I think there are a few issues going on here. Um, I think that the, you know, the officer dealt with Ms. Coley previously that week, knew that there's these ongoing allegations of prostitution and knew that she, uh, had been a heroin user. Um, and it's, I think it's often the case, I think that you can infer that she said, 'well yeah, I'm a heroin user but I'm not using now' as something that would be somewhat typical of a, of a drug addict when they're talking to a police officer. Um, so when he saw the ripped, torn baggies, I think that it was reasonable. I think there's the assumption everyone would make, especially an officer with his knowledge and experience of how heroin is packaged is that she had paraphernalia, heroin paraphernalia in her motor vehicle. Um, once there's probable cause to believe there's paraphernalia in the vehicle, then I think that it's, it follows very easily that he's allowed to search that vehicle for other paraphernalia or other illegal substances. Uh, and that can be a warrantless search because of the *Carroll* doctrine."